**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| G&E REAL ESTATE, INC., <br><br>       Plaintiff <br><br>       v. <br><br> AVISON YOUNG–WASHINGTON, D.C., LLC, *et al.*, <br><br>       Defendants | Civil Action No. 14-418 (CKK) |

**MEMORANDUM OPINION**
(February 26, 2016)

This case amounts to a dispute among real estate brokerage firms and associated real estate professionals—specifically professionals who decamped from one of those firms, Grubb & Ellis, Inc., to a competitor firm—in connection with the lease of a commercial space in Northern Virginia. The parties agree that, on June 8, 2012, Analytic Services, Inc. ("ANSER") entered into a lease for the Skyline Property in Falls Church, Virginia, and a real estate commission payment of $1,225,000 was made to Avison Young–Washington, D.C., LLC ("Avison Young"). But they do not agree on several aspects of what happened prior to the signing of this lease and whether, legally, that creates liability in tort or contract for the several defendants. Plaintiff G&E Real Estate, Inc.—whose relationship to Grubb & Ellis is disputed[1]—brings claims in tort and in contract against ANSER, against real estate professionals Joseph Peyton, Bruce McNair, and David Roehrenbeck, and against Avison Young. The Court refers to the real estate professionals and Avison Young, collectively, as the "Avison Young Defendants." Specifically, Plaintiff brings the following claims against various defendants:

---

[1] The Court refers to Grubb & Ellis, Inc., the real estate firm from which several employees left to join Avison Young, which subsequently declared bankruptcy, as Grubb & Ellis. The Court refers to the plaintiff in this case, which is formally known as G&E Real Estate, Inc., d/b/a Newmark Grubb Knight Frank, as G&E. The relationship between Grubb & Ellis and G&E is discussed further below.

- a breach of contract claim against ANSER, claiming a breach of the "Exclusive Tenant Representation Agreement" (count I);
- a claim for tortious interference with contract against the Avison Young Defendants (count II);
- a claim for unjust enrichment against Avison Young (count III);
- a claim for breach of contract against Bruce McNair, alleging a breach of his employment agreement (count IV);
- a claim for breach of contract against David Roehrenbeck, alleging a breach of his employment agreement (count V);
- a claim for breach of contract against Joseph Peyton, alleging a breach of his independent contractor agreement (count VI);
- claims for breach of fiduciary duty against McNair (count VII) and against Roehrenbeck (count VIII);
- a claim for misappropriation of trade secrets against McNair, Roehrenbeck and Avison Young (count IX);
- and a Virginia statutory conspiracy claim against the Avison Young Defendants (count X).[2]

The defendants have moved for summary judgment on each of the claims remaining in this action. Before the Court is ANSER's [125] Motion for Summary Judgment with respect to the breach of contract claim, the only remaining claim against it. Also before the Court is the Avison Young Defendants' [127] Motion for Summary Judgment with respect to all claims against those defendants. Upon consideration of the pleadings,[3] the relevant legal authorities, and the record

---

[2] The statutory conspiracy claim against ANSER was previously dismissed. *See* Order, ECF No. 49.

[3] The Court's consideration has focused on the following documents:

- Def. ANSER's Mot. for Summary Judgment ("ANSER's Mot."), ECF No. 125;
- Pl. G&E Real Estate's Opp'n to ANSER'S Mot. for Summary Judgment ("Opp'n to ANSER Mot."), ECF No. 128;
- Reply Mem. in Supp. of Mot. for Summary Judgment Filed by Def. ANSER ("ANSER's Reply"), ECF No. 131;
- Avison Young Defs.' Mot. for Summary Judgment ("Avison Young Mot."), ECF No. 127;
- Pl. G&E Real Estate's Opp'n to Avison Young Defs.' Mot. for Summary Judgment ("Opp'n to Avison Young Mot."), ECF No. 129; and

for purposes of this motion, the Court GRANTS ANSER's [125] Motion for Summary

Judgment, and the Court GRANTS IN PART and DENIES IN PART the Avison Young

Defendants' [127] Motion for Summary Judgment. Specifically, the Court GRANTS the Avison

Young Defendants' motion with respect to the tortious interference with contract claim (count

II); the unjust enrichment claim (count III); the breach of contract claim against Joseph Peyton

(count VI); the breach of fiduciary duty claim against Roehrenbeck (count VIII); the trade secrets

claim (Count IX); and the Virginia statutory conspiracy claim (count X). The Court DENIES that

motion with respect to the breach of contract claims against McNair and Roehrenbeck (counts IV

and V). Finally, the Court DENIES IN PART and GRANTS IN PART that motion with respect to

the breach of fiduciary duty claim against McNair (count VII), as explained below. In short, for

the reasons explained below, the only claims that survive summary judgment are the contract

claims against McNair and Roehrenbeck and, to the extent explained below, the fiduciary duty

claim against McNair.

## I. BACKGROUND

In light of the numerous claims in this case and the two pending motions for summary

judgment, the Court provides a brief overview of the factual background of this case—presenting

the facts in the light most favorable to Plaintiff, here the non-moving party, as the Court must in

considering motions for summary judgment.[4] The Court reserves additional presentation of the

pertinent facts for the discussion of the individual claims below.

---

- Reply to Pl.'s Opp'n to the Avison Young Defs.' Mot. for Summary Judgment ("Avison Young Reply"), ECF No. 132.

In an exercise of its discretion, the Court finds that holding oral argument in this action would
not be of assistance in rendering a decision. *See* LCvR 7(f).

[4] The Court notes that Plaintiff has not fully complied with the dictates of Local Civil Rule 7(h),
which requires that any opposition to a motion for summary judgment "be accompanied by a

In August 2009, ANSER selected Grubb & Ellis as its real estate broker. ANSER's Statement of Material Facts Not in Dispute ("ANSER's Statement"), ECF No. 125-1, ¶ 1. After a series of intervening events discussed below, the agreement was renewed on October 10, 2011. *Id.* ¶ 2. Pursuant to the renewed agreement, in exchange for the real estate services Grubb & Ellis agreed to provide, ANSER agreed to "openly disclose to all interested parties that [it had] engaged [Grubb & Ellis's] services … and that ANSER recognizes [Grubb & Ellis] as your exclusive real estate representative." *Id.* ¶ 5 (quoting 2011 agreement).

On February 20, 2012, Grubb & Ellis filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. *Id.* ¶ 14. Through the bankruptcy proceedings, BGC Partners, Inc. ("BGC"), purchased certain assets of Grubb & Ellis.[5] *Id.* ¶ 19. This purchase agreement included certain specified executory contracts. *Id.* ¶¶ 20-23. ANSER's lease with landlord Vornado for the Skyline Property was executed on June 8, 2012. *Id.* ¶ 18. Pursuant to the terms of the lease and a commission agreement between Vornado and Avison Young, *id.* ¶¶ 16, 18, a commission of $1,225,000 was paid to Avison Young. Pl.'s ANSER Statement ¶ 32.

---

separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h). While Plaintiff has provided a Statement of Materials Facts in Dispute with respect to each of the motions for summary judgment, Plaintiff does not distinguish between those facts that are disputed and those that are undisputed. Indeed several facts in Plaintiff's statements rely on Defendants' statements as their sole authority, and presumably, therefore, are undisputed. In addition, other facts contain no citation to "the parts of the record relied on to support the statement." *Id.* Pursuant to the Local Rules, the Court will ignore those unsupported facts for the purposes of ruling on the motions for summary judgment. Plaintiff's failure to fully comply with this rule undermines its fundamental purpose: for the parties to isolate the material factual disputes in the case and to identify the pertinent parts of the record. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145, 150–51 (D.C. Cir. 1996).

[5] Plaintiff characterizes the purchase agreement as encompassing "substantially all of the assets of Grubb & Ellis." Pl.'s Statement (ANSER) ¶ 33. Defendant does not appear to dispute this characterization.

The Court now briefly introduces several real estate professionals involved with this case:

- **Joseph Peyton.** Beginning on August 20, 2009, Peyton provided brokerage services to ANSER through Grubb & Ellis as an independent contractor.[6] *Id.* ¶ 7. Peyton resigned from his role at Grubb & Ellis on March 2, 2010. ANSER's Statement ¶ 8. Thereafter, he joined Avison Young. *Id.*

- **Bruce McNair.** Beginning on August 20, 2009, McNair provided brokerage services to ANSER as an employee of Grubb & Ellis. *Id.* ¶ 7. McNair gave notice of his resignation from employment with Grubb & Ellis on February 13, 2012, and began employment with Avison Young on that same day. *Id.* ¶ 11.

- **David Roehrenbeck.** Roehrenbeck began working for Grubb & Ellis as an analyst for the McNair Morris Team in April 2009. Avison Young Statement ¶ H. On February 10, 2012, McNair informed Roehrenbeck that the McNair Morris team was leaving Grubb & Ellis for Avison Young and that Avison Young would offer Roehrenbeck a position. ANSER's Statement ¶ 10. Roehrenbeck accepted the position at Avison Young and left Grubb & Ellis. *Id.*

- **Brett Diamond.** Diamond was a real estate professional with Grubb & Ellis. ANSER's Statement ¶ 35. He remained with Grubb & Ellis after the filing of the bankruptcy petition and subsequently joined G&E. *Id.*

The Court reserves further discussion of the role of each of these professionals in the real estate transaction at issue in this case for the discussion of the issues below because the parties' disputes regarding those roles go to the core of several of the claims in this case.

As the docket reflects, this case was filed in the Eastern District of Virginia on October 15, 2013. Subsequently, on November 16, 2013, BGC signed an assignment of claims, assigning Plaintiff G&E certain rights pertaining to the commission at issue in this case. *Id.* ¶ 30; *see also id.*, ex. 6 (Assignment of Claim), ¶¶ C, D. Plaintiff subsequently filed an amended complaint, which referenced the assignment. *See* Am. Compl., ECF No. 31, ¶ 5.

---

[6] The parties, at times, refer to Peyton at a G&E employee, but it is clear from the record that he was an independent contractor. *See, e.g.*, ANSER Mot., Ex. 3 at 7.

This case was subsequently transferred to this Court from the Eastern District of Virginia under 28 U.S.C. § 1404(a). *See* Order dated March 14, 2014, ECF No. 72. Before this case was transferred, Judge Claude M. Hilton granted Defendant ANSER's motion to dismiss as to count X, the statutory conspiracy claim, and dismissed that count as to ANSER. *See* Order dated Feb. 3, 2014, ECF No. 49. Subsequent to the transfer, this Court denied the Avison Young Defendants' motion to dismiss that same count as to them. *See* Order dated October 8, 2014, ECF No. 98. After a period of discovery, the several defendants have filed the summary judgment motions that are now pending before the Court.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id*. Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record – including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence – in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis

in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III. DISCUSSION

ANSER has moved for summary judgment on the sole claim remaining against it—a breach of contract claim. The Avison Young Defendants have moved for summary judgment on all of the claims against one or more of them: tortious interference with contract, unjust enrichment, breach of contract (with respect to employment and independent contractor

agreements), breach of fiduciary duty, misappropriation of trade secrets, and statutory conspiracy. In addition, both ANSER and the Avison Young Defendants argue that Plaintiff's claims fail because Plaintiff cannot prove its damages with reasonable certainty. The Court first addresses ANSER's arguments; then addresses the Avison Young Defendants' arguments as to each claim; and finally addresses the parties' arguments as to damages.

## A. Breach of Contract Claim: ANSER

In August 2009, ANSER selected Grubb & Ellis as its real estate broker. ANSER's Statement, ¶ 1. That agreement was renewed on October 10, 2011. *Id.* ¶ 2. Pursuant to the renewed agreement, which the Court refers to as the Tenant Representation Agreement, ANSER agreed to the following obligations in exchange for various real estate services that Grubb & Ellis was to provide:

> In consideration of the services to be provided by G&E, we request that ANSER openly disclose to all interested parties that you have engaged our company's services; that ANSER refer all inquir[i]es regarding real estate matters to our attention; and, that ANSER recognize G&E as your exclusive real estate representative.

> ANSER shall designate an authorized project representative. ANSER, or such authorized representative, shall provide full information regarding the requirements of the project in a timely manner, according to the project schedule. ANSER shall also examine the documents submitted by us and shall render decisions pertaining thereto promptly, according to the project schedule.

ANSER Mot., Ex. 2. The agreement further provided that the term for phase 1 and phase 2 of the project—which are the only phases at issue in this case—was 24 months from the execution of the agreement. The agreement further provided regarding early termination:

> However, if ANSER should ever become dissatisfied with our efforts for any reason, you may terminate our agency arrangement upon thirty (30) days prior written notice. Except for properties that we have worked on together to that point, you shall have no continuing obligation to our firm.

*Id.* In the Amended Complaint, Plaintiff alleges that ANSER breached this agreement when it directed the commission payment from the Skyline Property lease to Avison Young rather than to Grubb & Ellis. Am. Compl., ECF No. 31, ¶ 65.

ANSER argues that Plaintiff G&E has no standing to bring the breach of contract claim against it. To understand ANSER's argument, a quick sketch of the sequence of events underlying this case is helpful: first, through the bankruptcy process, Grubb & Ellis conveyed certain assets and rights to BGC, and second, while this case was pending, BGC then assigned certain claims to G&E. ANSER argues that both links in this chain are broken. ANSER first argues that Grubb & Ellis never conveyed any rights related to the Tenant Representation Agreement to BGC. ANSER next argues that, even if BGC had actually acquired the relevant rights, Plaintiff G&E did not timely obtain those rights such that it can bring related claims in this action. For each of these independent reasons, ANSER argues Plaintiff has no stake in the breach of contract claim and, thus, no standing to bring that claim in this action. Plaintiff responds that each of the links in the chain remain intact, allowing it to bring the claims in this case. The Court addresses, in turn, each link in the chain.

**1.  Transfer of Rights from Grubb & Ellis to BGC**

Some basics of bankruptcy law are necessary in order to understand the parties' arguments regarding the first link in the chain—the transfer of rights from Grubb & Ellis to BGC. Under the Bankruptcy Code, a contract that is executory on the date of the bankruptcy petition can be assumed, assigned, or rejected by the bankruptcy estate. *See* 11 U.S.C. § 365 (establishing parameters for assumption, assignment, and rejection of executory contracts); *In re Tornado Pizza, LLC*, 431 B.R. 503, 514 (Bankr. D. Kan. 2010) ("A debtor may assume a contract under § 365 only when the contract is executory on the date of filing."). The rejection of any

executory contract is considered to be a breach of that contract "immediately before the date of the filing of the petition." 11 U.S.C. § 365(g).

ANSER argues that the Tenant Representation Agreement was an executory contract with respect to the bankruptcy proceeding and that it was never assumed by the bankruptcy estate or assigned to BGC. Because the Tenant Representation Agreement was executory but was not assumed or assigned, ANSER argues, BGC had no stake in the contract that it could assign to Plaintiff G&E. Plaintiff responds that ANSER had materially breached the Tenant Representation Agreement prior to the filing of the bankruptcy petition and that, therefore, the contract could not be assumed or assigned through the bankruptcy process. Instead, the breach of contract claim, they argue, was assigned to BGC along with other such claims through the bankruptcy process. ANSER responds that there was no material breach of the Tenant Representation Agreement prior to the bankruptcy petition and that, even if there were such a breach, that it would not be sufficient to render the Agreement non-executory because the agreement was not terminated at that time. In essence, this amounts to a dispute about (1) whether Plaintiff has identified sufficient evidence of a relevant material breach to require factual resolution by a jury and (2) whether, legally, a material breach without any attempt to terminate is sufficient to render a contract non-executory. Because the Court concludes that Plaintiff has not identified any evidence of a material breach of contract prior to the bankruptcy petition, the Court need not consider ANSER's legal argument regarding the impact of a pre-petition breach without termination.

As an initial matter, the Court notes that, while Plaintiff's brief is not a model of clarity on this point, the Court understands Plaintiff to be arguing that a material breach prior to the filing of the bankruptcy petition—and only a material breach prior to such filing—renders a

contract non-executory. *See, e.g.*, Pl.'s ANSER Opp'n at 14 ("Plaintiff was not required to assume the Brokerage Agreement pursuant to Section 365 of the Bankruptcy Code because the Agreement had already been breached"); *id.* at 14-15 ("A contract that has terminated or expired prior to the filing of a bankruptcy petition is no longer executory. … Because the Brokerage Agreement had been breached and was therefore terminated prior to G&E's bankruptcy petition, there was nothing left to assume."). Therefore, while Plaintiff describes several events that it claims were material breaches by ANSER—including events after the filing of the bankruptcy petition—the Court will look only to putative breaches that occurred prior to the bankruptcy petition, which was filed at 9:19 P.M. on February 20, 2012. *See* Bankruptcy petition, *In re: Grubb & Ellis Co., et al.* (S.D.N.Y. Bankr. 12-10685-mg), ECF No 1. Plaintiff describes the claimed breach as follows:

> After Defendant McNair had separated from Grubb & Ellis on February 13, 2012, and immediately began working with Avison Young the same day, Anser toured the Skyline property a third time, on February 20, 2012, this time with Avison Young. McNair continued to work with Anser on the Skyline Property once hired by Avison Young. From February 13, 2012 forward, Anser was clearly not recognizing G&E as its exclusive real estate representative. Anser was instead working with Avison Young.

Pl.'s ANSER Opp'n at 16-17. Plaintiff further summarizes the putative breach:

> It did not refer all inquiries to G&E, or recognize G&E as its exclusive real estate representative. Instead, Anser began working with Avison Young immediately upon McNair's resignation from G&E and his employment at Avison Young on February 13, 2012. McNair then arranged and conducted a walkthrough of the Skyline Property with Anser's CEO.

*Id.* at 18-19.

In short, Plaintiff is claiming that, between February 13 and 20, 2012, ANSER breached two provisions of the Tenant Representation Agreement: the requirement that "ANSER refer all inquir[i]es regarding real estate matters to our attention" and that "ANSER recognize G&E as

your exclusive real estate representative."[7] With respect to the requirement to refer inquiries to Grubb & Ellis, Plaintiff points to no facts supporting this claim. Plaintiff nowhere identifies inquiries that ANSER received or failed to refer to Grubb & Ellis. Insofar as Plaintiff means to suggest that working with brokers at Avison Young regarding the Skyline Property was a failure to refer inquiries, the contract simply does not bear that reading. The discussions regarding the Skyline Property began long before February 13, 2012, *see* Pl.'s ANSER Statement ¶ 11, and therefore there was no real estate inquiry that required referral under the Tenant Representation Agreement during this period of time.

As to the basis for its claim that ANSER breached the obligation to recognize Grubb & Ellis as its exclusive real estate representative, Plaintiff makes three statements:

(1) "Anser toured the Skyline property a third time, on February 20, 2012, this time with Avison Young." Pl.'s ANSER Opp'n at 16.

(2) "Anser began working with Avison Young immediately upon McNair's resignation from G&E and his employment at Avison Young on February 13, 2012." *Id.*

(3) "McNair then arranged and conducted a walkthrough of the Skyline Property with Anser's CEO." *Id.* at 18-19.

These claims require further examination. While it is undisputed that McNair left Grubb & Ellis and joined Avison Young on February 13, 2012, the only event that could constitute a breach that Plaintiff identifies during the relevant time period—February 13 to February 20—in its statement of facts responding to ANSER's motion is the following: "On February 20, 2012, Anser toured the Skyline Property again, this time with Avison Young. This tour included Anser's executives, who indicated that they were 'extremely interested' in relocating to the property." Pl.'s ANSER

---

[7] Notably, Plaintiff does not rely on these breaches for the breach of contract claim itself, and neither the original nor the amended complaint makes any reference to any such breach of contract. *See generally* Am Compl.

Statement ¶ 25. Plaintiff's statement of facts nowhere indicates any role for McNair in organizing or participating in this tour. Nor, importantly, does the statement of facts include any citation to the record for these propositions. The failure to do so violates the applicable rules, and makes it difficult for the Court to evaluate this proposition. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"); LCvR 7(h)(1) ("An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."). That said, the Court acknowledges that in responding to the Avison Young's motion for summary judgment, Plaintiff supports a similar proposition with a citation to an email sent from Josh Peyton to Bruce McNair on February 20, 2012, at 7:44 p.m. *See* Pl.'s Avison Young Statement ¶ 42 (citing Diamond Dep., Ex. 19). The entire body of the email (excluding footer text) is as follows:

> Bruce,
>
> Tour went well today. Joan [Zaorski], Tom, Dan and Sean [Welch] were there. We toured the building again for about an hour. Joan asked me to walk the 5th floor with her while the rest of the group toured the 2nd. In short, I think they are extremely interested in relocating to Skyline- my concern is they are focused on the 5th floor. Happy to discuss in greater detail.
>
> Josh Peyton
> Principal
> Avison Young
> 1201 15th Street NW. Suite 510
> Washington, DC 20005

Diamond Dep., Ex. 19, ECF No. 129-3. As an initial matter, the Court notes that this email

provides no support for Plaintiff's statement that McNair organized the tour or that McNair had

any interactions with ANSER during the period from February 13 to February 20, 2012. It is

clear from the email that McNair was not personally present during the tour. Accordingly, what

remains of Plaintiff's claim of a pre-petition breach is ANSER's participating in a tour of the

Skyline Property with Josh Peyton, of Avison Young, without participation from any

representatives of Grubb & Ellis.

In response, ANSER emphasizes the collaboration between Grubb & Ellis and Avison

Young prior to this tour. Specifically, ANSER emphasizes the history of collaboration between

Peyton and McNair on the ANSER project—even after Peyton left Grubb & Ellis for Avison

Young in 2010. *See* ANSER's Reply at 7-8 (citing Avison Young Defs.' Statement, ¶¶ R – W;

Diamond Dep. at 64, 70-71). After Peyton left Grubb & Ellis, Peyton continued to participate in

meetings with ANSER and was copied on Grubb & Ellis communications that included work

product regarding ANSER. *See id.* In addition, Diamond stated in his deposition testimony as

Plaintiff's corporate representative—and as someone who never left Grubb & Ellis for Avison

Young—that both he and McNair viewed Peyton as part of the ANSER team even though Peyton

was working at Avison Young. Diamond Dep. 65:16-20. McNair stated he viewed Peyton as the

lead on the ANSER account notwithstanding his affiliation by Avison Young. None of this is

controverted by Plaintiff.[8]

---

[8] Insofar as the Avison Young Defendants present these material facts in their Statement of
Undisputed Material Facts, Plaintiff never responds to those particular facts or presents facts
suggesting genuine issues of material fact that would require resolution at trial. *See* LCvR
7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts
identified by the moving party in its statement of material facts are admitted, unless such a fact is
controverted in the statement of genuine issues filed in opposition to the motion."). Moreover,

This background is important to understanding the events of February 2012 and to resolving whether the February 20, 2012, tour was a material breach of contract. In short, the following facts are uncontroverted. Since 2010, ANSER worked together with Peyton, an Avison Young affiliate, and with McNair and other Grubb & Ellis affiliates on their leasing project. On February 8, 2012, ANSER representatives participated in a tour of the Skyline Property with McNair, then a Grubb & Ellis affiliate. *See* Pl.'s ANSER Statement ¶ 25. On February 13, 2012, McNair left Grubb & Ellis and joined Avison Young. On February 20, 2012, ANSER representatives participated in a tour of the Skyline Property with Peyton, an Avison Young affiliate—apparently without any participation by Grubb & Ellis affiliates. *See id.* ¶ 23.

Plaintiff claims that this February 20 tour was a material breach of ANSER's contract with Grubb & Ellis—specifically, the requirement that ANSER recognize Grubb & Ellis as its "exclusive real estate representative." The Court disagrees. The Court concludes that this tour was not a breach of the contractual obligations, let alone a material breach of those obligations. Plaintiff acknowledges that none of the events prior to February 13, 2012, breached the relevant contract provision. *See* Pl's ANSER Opp'n at 16 ("From February 13, 2012 forward, Anser was clearly not recognizing G&E as its exclusive real estate representative."). That is, ANSER's engaging with a team of real estate professionals that included the participation of a broker affiliated with Avison Young did not render ANSER in breach of the contract. So, too, neither did ANSER participating in a tour where there was an Avison Young affiliate—who had long been collaborating with all parties on this project, but with no Grubb & Ellis affiliates—breach the contract. Simply put, ANSER's participation in a tour with Peyton, but with no one from Grubb

---

the deposition testimony of Diamond and McNair as to their own beliefs and understandings stands on its own, and Plaintiff never points to anything that would cast any doubt on this testimony.

& Ellis, could not be a breach of the requirement that ANSER recognize Grubb & Ellis as its exclusive real estate presentative, let alone a material breach of the contract. Because Plaintiff presents no other evidence of a breach of contract by ANSER prior to the bankruptcy petition, the Court concludes that the contract was an executory contract at the time of petition. Given that the contract was an executory contract at the time of the petition, BGC never acquired a breach of contract claim pertaining to the Tenant Representation Agreement and, therefore, it had no claim that it could assign to Plaintiff.

For that reason alone, Plaintiff has no standing to pursue a breach of contract claim against ANSER. Accordingly, the Court need not address ANSER's secondary argument that, even if the contract had been *breached* prior to the bankruptcy petition, that it was an executory contract because Grubb & Ellis had taken no steps to *terminate* the contract prior to the petition.

### 2.   Transfer of Rights from BGC to G&E

Even though the Court has concluded that Plaintiff has no standing to pursue a contract claim against ANSER because BGC never acquired that claim, as explained above, the Court nonetheless addresses ANSERS's argument that Plaintiff G&E has no standing to bring the contract claim because Plaintiff had not been assigned the claim by BGC as of the commencement of this case. The Court does so not only in the interest of thoroughness but also because of the potential ramifications for the other claims in this case.

ANSER argues that Plaintiff's standing should be assessed as of the date this action was initiated and, therefore, Plaintiff has no standing to bring the claims against it. Plaintiff responds that its standing should be measured by reference to the Amended Complaint and, because it had standing as of that date, it has standing to bring this action. For the reasons explained below, the Court agrees with Plaintiff and concludes that standing should be measured as of the date of the

operative complaint—here, the Amended Complaint filed December 23, 2013. Therefore, Plaintiff G&E can assert in this case any claims assigned to it by BGC that BGC could have asserted absent the assignment.

With respect to the relevant facts, there is no dispute. Plaintiff filed this action on October 15, 2013. Plaintiff filed its First Amended Complaint on December 23, 2013, ECF No. 31. Both the original complaint and the First Amended Complaint included the following allegation: "On April 5, 2012, Newmark's parent company, BGC Partners, Inc., purchased substantially all of the assets, contract rights and claims of Grubb & Ellis in the Grubb & Ellis Chapter 11 Bankruptcy, and thereafter BGC Partners assigned the right to the ANSER commission to Newmark." Compl., ECF No. 1, ¶ 5; *see* Am. Compl., ECF No. 31, ¶ 5. However, it was not until November 16, 2013—between the filing of the original complaint and the amendment—that BGC signed an Assignment of Claim, assigning Plaintiff "all rights, interests, claims, demands, causes of action, and choses in action asserted in or related to the Assigned Matter," which in turn referred to "all of [Grubb & Ellis'] right, title and claim to, interest in, and entitlement to the [Skyline] Commission, and all of G&E's right, title and claim to, and interest in, the [Tenant Representation] Agreement. ANSER's Mot., Ex. 6, at 1. Accordingly, if standing is measured as of the commencement of this action, when Plaintiff had no stake in the claims at issue, Plaintiff has no standing to bring claims against ANSER. Alternatively, if standing is measured as of the filing of the Amended Complaint, then Plaintiff has standing to the same extent that BGC would have had standing to bring this case.

Neither the Supreme Court nor the D.C. Circuit Court of Appeals has directly resolved the question in this case: whether the date of the commencement of an action or the date of the operative complaint is the relevant date for determining standing. Moreover, the Court

acknowledges that there is a tension between the Supreme Court's statements regarding related questions. Plaintiff highlights the Supreme Court's statement in *Rockwell International Corp. v. United States* that, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." 549 U.S. 457, 473-74 (2007). By contrast, ANSER emphasizes the Supreme Court's statement in *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, that the time of filing rule "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." 541 U.S. 567, 570-71 (2004). But neither case definitively answers the question presented here—whether to look to the state of things at the time of the *original* complaint or at the time of the filing of an *amended* complaint for evaluating standing in a diversity case. Nor does the application of *Rockwell* by the D.C. Circuit Court of Appeals in *Mohammadi v. Islamic Republic of Iran* resolve this question. 782 F.3d 9, 18 (D.C. Cir. 2015) (holding that district court did not abuse its discretion in declining to consider "jurisdictional bases set forth in prior iterations of the complaint").

Notwithstanding the tension in the case law, the Court is persuaded that the better reading of the applicable law is that the Court must measure standing by the state of the world as of the date of the Amended Complaint. The Court is particularly persuaded by the thorough analysis presented by the Ninth Circuit Court of Appeals in *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1046 (9th Cir.), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015), *cert. denied*, 136 S. Ct. 240 (2015). In *Northstar*, the Ninth Circuit considered whether a plaintiff had standing in a circumstance in which an assignment of claims was filed between the filing of the case and the filing of an amended complaint. 779 F.3d at 1034-44. After

conducting a thorough analysis of the relevant Supreme Court precedent and decisions of other federal courts of appeals, the Ninth Circuit concluded that it was proper to assess the plaintiff's standing as of the date of the amended or supplemental complaint. In distinguishing *Grupo Dataflux*, the court noted that it was considering a federal question case while *Grupo Dataflux* concerned diversity jurisdiction but also emphasized that "[m]ore significantly, unlike *Grupo Dataflux,* the present case involves the filing of a supplemental pleading that became the operative pleading in the case on which subject-matter jurisdiction must be based." *Id.* at 1047. In other words, standing may be assessed by the timing of the filing of the operative complaint in an action—whether the original complaint or a supplemental or amended complaint.

The Ninth Circuit is not alone in coming to this conclusion. In an unpublished decision, the Fourth Circuit Court of Appeals concluded that standing could be based solely on events that occurred between the original filing of a complaint and the filing of an amended complaint. *Daniels v. Arcade*, 477 F. App'x 125, 130-31 (4th Cir. 2012). Indeed, in many Circuits, as a general rule, supplemental pleadings may be used to remedy defects with subject matter jurisdiction, *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 5 (1st Cir. 2015) (citing cases), and standing is a "threshold jurisdictional requirement," *Bauer v. Marmara*, 774 F.3d 1026, 1031 (D.C. Cir. 2014).

The case before this Court, like *Northstar* and *Daniels*, concerns the filing of an amended complaint.[9] In light of the analysis of the Ninth Circuit in *Northstar* and of the Fourth Circuit in *Daniels* discussed above, the Court concludes that it is proper to measure Plaintiff's standing as

---

[9] It is of no moment that the operative complaint in this case was styled as "amended complaint" rather than a "supplemental complaint." While that designation may affect the running of the statute of limitations, it has no effect in this case because no party has raised a statute of limitations defense.

of the filing of the Amended Complaint, which occurred on December 23, 2013. By that date, BGC had assigned Plaintiff G&E claims related to the Tenant Representation Agreement. Accordingly, to the extent that BGC Partners would have had standing as of the filing of the original complaint, so too Plaintiff has standing in this case. However, as explained above, because Tenant Representation Agreement was an executory contract at the time of Grubb & Ellis' bankruptcy petition and because that agreement was neither assumed by the bankruptcy estate nor assigned to BGC, BGC had no breach of contract claim that it could have assigned to G&E in the first instance. In light of Plaintiff's lack of standing to bring this claim, the Court grants summary judgment to ANSER on the breach of contract claim, the only remaining claim against ANSER.

**B.  Tortious Interference with Contract**

Plaintiff next claims that the Avison Young Defendants are liable for tortious interference with contract with respect to the 2011 Tenant Representation Agreement by acting through improper means to induce ANSER to terminate and breach the Agreement and to induce ANSER to direct the related commission payment to Avison Young. *See* Am. Comp. ¶ 71. Under Virginia law,[10] a claim for tortious interference with contract requires a showing of "(i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach

---

[10] The Avison Young Defendants argue that Virginia law is applicable under the applicable choice of law rules. Plaintiff states that it does not concede the applicability of Virginia law, but states that "for the present Motion, Plaintiff will address each argument addressing the authorities that the AY Defendants have relied upon." Pl.'s AY Opp'n at 16-17. However, Plaintiff makes no argument that District of Columbia law or any other source of law governs the dispute. Accordingly, the Court deems Plaintiff to have conceded the application of Virginia law to the claims regarding the Tenant Representation Agreement for the purposes of the pending motions and proceeds to examine these claims pursuant to Virginia law.

or termination of the relationship or expectancy; and (iv) resultant damage to the party whose

relationship or expectancy has been disrupted." *DurretteBradshaw, P.C. v. MRC Consulting,*

*L.C.*, 670 S.E.2d 704, 706 (Va. 2009). "Additionally 'when a contract is *terminable at will*, a

plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not

only an *intentional* interference that caused the termination of the at-will contract, but also that

the defendant employed '*improper* methods.' ' " *Dunn, McCormack & MacPherson v. Connolly*,

708 S.E.2d 867, 870 (Va. 2011) (quoting *Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987))

(emphasis in original).

Given this framework, the Avison Young Defendants argue that (1) Plaintiff has no

standing to pursue this claim because BGC was never assigned the Tenant Representation

Agreement and (2) Plaintiffs cannot show that the Avison Young Defendants used improper

methods to induce ANSER to breach the contract. With respect to the first argument, Plaintiff

responds that the contract was materially breached prior to the bankruptcy petition and that the

associated claims, therefore, were properly assigned to BGC and then to Plaintiff. With respect to

the second argument, Plaintiff responds that it has identified several improper methods used by

the Avison Young Defendants. The first argument essentially repeats the arguments of ANSER

and Plaintiff with respect to the breach of contract claim against ANSER. The resolution of that

dispute is therefore dispositive of the tortious interference claim as well. As explained above, the

Tenant Representation Agreement *was* executory at the time of the bankruptcy petition, and it

was neither assumed by the bankruptcy estate nor assigned to BGC. Therefore, BGC would not

have had standing to pursue the tortious interference claim and, even though BGC assigned any

such claims to Plaintiff prior to the filing of the Amended Complaint, Plaintiff does not have

standing to pursue that claim in this action. Therefore, there is no need for the Court to address

the parties' arguments regarding the use of improper methods. Because Plaintiff lacks standing to

bring this claim, the Court grants summary judgment to the Avison Young Defendants with

respect to the tortious interference claim.

## C.  Unjust Enrichment

Under Virginia law,[11] "A plaintiff asserting unjust enrichment must demonstrate the

following three elements: '(1) he conferred a benefit on [the defendant]; (2) [the defendant] knew

of the benefit and should reasonably have expected to repay [the plaintiff]; and (3) [the

defendant] accepted or retained the benefit without paying for its value.' " *Rosetta Stone Ltd. v.*

*Google, Inc.*, 676 F.3d 144, 165-66 (4th Cir. 2012) (quoting *Schmidt v. Household Finance*

*Corp.,* 661 S.E.2d 834, 838 (Va. 2008)). Plaintiff brings an unjust enrichment claim against

Avison Young—not against the individual defendants—claiming that Avison Young was unjustly

enriched by virtue of receiving the benefit of Grubb & Ellis' work on the Skyline Property

transaction and by receiving a leasing commission for that transaction. Avison Young argues that,

even if Grubb & Ellis had a right to a portion of the leasing commission, Plaintiff has no

standing to pursue a claim to that commission under an unjust enrichment theory. Plaintiff

responds that it has standing because BGC was assigned claims relating to the Tenant

Representation Agreement through the bankruptcy process and that, in turn, those claims were

assigned to Plaintiff. However, in considering the breach of contract claim against ANSER

above, the Court concluded that claims pertaining to the Tenant Representation Agreement were

not properly assigned to BGC because that agreement was still an executory contract at the time

of the bankruptcy petition. For those same reasons, the Court concludes that BGC was never

---

[11] *See supra* note 10 (Virginia law applicable to the claims related to the Tenant Representation
Agreement for the purposes of present motions).

assigned the unjust enrichment claim—a claim in quasi-contract—and that BGC had no unjust

enrichment claim that it could assign to Plaintiff G&E. Accordingly, Plaintiff has no standing to

pursue the unjust enrichment claim against Avison Young, and the Court grants summary

judgment to Avison Young on this claim.

**D. Breach of Employment Contracts**

The Court now turns to Plaintiff's claims that McNair and Roehrenbeck breached their

employment agreements with Grubb & Ellis and that Peyton breached his independent contract

agreement with Grubb & Ellis. The Court concludes that claims against McNair and

Roehrenbeck survive summary judgment but that the claim against Peyton does not.

**1. McNair and Roehrenbeck**

The Court addresses the claims against McNair and Roehrenbeck jointly because the

legal arguments overlap. Plaintiff claims that McNair materially breached his Employment

Agreement by providing Grubb & Ellis' confidential information and trade secrets to Avison

Young; by wrongfully diverting the ANSER business and the subsequent Skyline commission

away from Grubb & Ellis; and by concealing business opportunities when he failed to provide

Grubb & Ellis a report identifying the ANSER transaction upon his departure from Grubb &

Ellis. Plaintiff claims that Roehrenbeck breached his employment agreement by providing to

Avison Young confidential and proprietary information belonging to Grubb & Ellis that he

acquired while an employee of Grubb & Ellis. With respect to *both* McNair and Roehrenbeck,

the Avison Young Defendants argue that none of the provisions that Plaintiff claims McNair and

Roehrenbeck breached were applicable because McNair resigned with adequate justification.

Specifically, they argue that McNair resigned with adequate justification because Grubb & Ellis

failed to pay him the retention bonus that it was obligated to provide in January 2012. Plaintiff

responds that McNair and Roehrenbeck cannot rely on the adequate justification clause because McNair had breached his employment agreement before Grubb & Ellis failed to pay the retention bonus. The Avison Young Defendants respond, in turn, that Plaintiff has not identified evidence of a material breach by McNair prior to the failure to pay the retention bonus. In short, the resolution of these arguments depends wholly on whether Plaintiff has identified sufficient evidence of a material breach by McNair prior to Grubb & Ellis' failure to pay his bonus.

As the Avison Young Defendants point out, it is not sufficient for Plaintiff to state that "[a]t trial, it will show that McNair materially breached his employment agreement." Pl.'s AY Opp'n at 25. In opposing a motion for summary judgment, a party has the burden "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56); *accord Grimes v. D.C.*, 794 F.3d 83, 95 (D.C. Cir. 2015). Plaintiff has identified three "examples" of material breaches by McNair; the Court therefore examines the evidentiary support for these three "examples" that Plaintiff has identified to determine whether there is a genuine issue of material fact that requires resolution at trial.[12]

Plaintiff identifies three bases for a breach by McNair: (1) that "McNair conspired with Peyton since at least April 2011 to 'transition' the Anser representation to Avison Young while McNair was still working for [Grubb & Ellis]"; (2) that McNair and Peyton "convinced Sean

---

[12] The Court also notes that, in identifying the evidentiary basis for each of these three claims, Plaintiff refers to a single paragraph from its Statement of Material Facts to support that basis. So far, so good. But the identified facts do not appear to pertain to the respective propositions in Plaintiff's opposition. However, the Court will not limit itself to the specific citation provided in Plaintiff's memorandum of points and authorities opposing summary judgment and will review Plaintiff's statement of material facts in its entirety to determine whether there is support for these propositions.

Welch of Anser to work with them in an effort to transfer the Anser representation to Avison Young"; and (3) that "McNair and Peyton cut Brett Diamond out of the communications loop, precluding his participation in the Anser transaction." Pl.'s AY Opp'n at 25.

With respect to the claim that McNair conspired with Peyton to transition the ANSER account, the Avison Young Defendants respond that there is no evidence that McNair ever spoke with anyone at ANSER about transitioning the account. The Court agrees with the Avison Young Defendants as far as this statement goes—that the evidence shows that only *Peyton* contacted anyone at ANSER regarding a potential transition. However, the Avison Young Defendants do not respond to Plaintiff's claim that McNair *conspired* with Peyton regarding a potential transition. With respect to this claim, Plaintiff points to some evidence that McNair engaged with Peyton in conversations about potentially suggesting a transition of the Tenant Representation Agreement from Grubb & Ellis to Avison Young. *See* Pl's Avison Young Statement ¶¶ 14, 15, 22, 23 (citing portions of the record). Upon reviewing the portions of the record cited by Plaintiff, the Court concludes that there is a genuine issue of material fact as to whether McNair conspired with Peyton regarding transitioning the ANSER account and thus, whether McNair breached his contract prior to the failure to pay him his retention bonus.

With respect to Plaintiff's claim that McNair and Peyton convinced Sean Welch of ANSER to work with them to transition the ANSER arrangement, the Court agrees with the Avison Young Defendants that Plaintiff has presented no evidence that McNair himself attempted to convince Welch to pursue a transition of the agreement. However, insofar as Plaintiff is claiming that McNair worked *with* Peyton for him to convince Welch to do so, the Court concludes that Plaintiff has presented evidence of McNair's role such that there is a genuine issue of material fact as to that claim.

Finally, with respect to Plaintiff's claim that McNair and Peyton cut Diamond "out of the communications loop," the Court concludes that there is a genuine issue of material fact about whether McNair cut Diamond out of the loop—in such a fashion that would be a material breach of the contract. *See* Pl's AY Statement ¶¶ 32-33 (citing portions of the record). However, the Court notes that, insofar as Plaintiff states that McNair did not respond to an inquiry from Diamond about the status of the transaction, the claim is belied by the evidence, specifically the email response from McNair to Diamond's inquiry, as well as the reply from Diamond himself. *See* Avison Young Reply, Ex. 5 (email from McNair to Diamond: "Gone until the 11th…no action…trying to finalize all signatures for the commission agreement…hope to get Joan to tour a building or two and develop real time options to in place renewal…Sean says he has final utilization plan/needs"; reply from Diamond: "Perfect...thx!").

In sum, because there is a genuine issue of material fact with respect to whether McNair breached his employment agreement prior to Grubb & Ellis' failure to pay his retention bonus, the Court denies the Avison Young Defendant's motion for summary judgment with respect to the breach of contract claims against McNair and Roehrenbeck.

### 2. Peyton

Turning to the breach of contract claim against Peyton, the Court comes to the opposite conclusion—compared to the claims against McNair and Roehrenbeck—and the Court grants summary judgment to Peyton on this claim. Plaintiff claims that Peyton materially breached his independent contract agreement "by wrongfully diverting the ANSER business, which he encountered while working with Grubb & Ellis, away from Grubb & Ellis and conducting that business in the name of Avison Young." Am. Compl. ¶ 100. Plaintiff essentially argues that Peyton violated his independent contractor agreement by using confidential information

regarding the ANSER account that he obtained while affiliated with Grubb & Ellis in attempting

to divert the ANSER account from Grubb & Ellis to Avison Young. The Avison Young

Defendants respond that any confidentiality obligations do not cover information Peyton

received after he left Grubb & Ellis in March 2010, that confidentiality obligations do not

encompass information Peyton received while he was affiliated with Avison Young, and that

Plaintiff has not identified any misuse of information that was subject to confidentiality

agreements. The Court agrees with the Avison Young Defendants.

The Court first notes that Plaintiff cites to *no facts* in the section of its memorandum of

points and authorities regarding Peyton's putative breach that would support its claim that

Peyton actually breached the duties applicable to him. It identifies only what they claim are those

obligations, not those acts that constitute breaches of those obligations. Moreover, Plaintiff

wholly ignores the fact that Peyton collaborated with McNair, Diamond, and others at Grubb &

Ellis after his transition to Avison Young. There is no evidence that those activities would

constitute a breach of any reasonable reading of the independent contractor agreement. In

addition, insofar as Plaintiff seeks to recover from actions taken after the apparent end of

collaboration with Grubb & Ellis—after McNair and Roehrenbeck left Grubb & Ellis for Avison

Young—that claim fails because Plaintiff has not identified any confidential information or trade

secrets that Peyton received while he was still a Grubb & Ellis affiliate that he used in seeking to

"divert" the ANSER account from Grubb & Ellis to Avison Young. As to the period after Peyton

left Grubb & Ellis for Avison Young, various Grubb & Ellis affiliates shared information with

Peyton during this period of collaboration, and the use of this information by Peyton cannot be

the basis for Plaintiff's breach of contract claim. Because Plaintiff has identified no evidence that

would support the breach of contract claim, the Court grants summary judgment to the Avison Young Defendants on this claim.

## E.  Breach of Fiduciary Duty

### 1.  McNair

Plaintiff claims that McNair breached his fiduciary duty to Grubb & Ellis—his onetime employer—by (1) conspiring to induce ANSER to terminate its Agreement with Grubb & Ellis, (2) soliciting ANSER to enter into a brokerage agreement with Avison Young, and (3) directing the Skyline commission to Avison Young instead of to Grubb & Ellis. *See* Am. Compl. ¶ 105. The Avison Young Defendants argue that Plaintiff has not identified any evidence of these putative breaches. They also argue, with respect to the claim regarding the Skyline commission, that post-employment conduct cannot be the basis for a breach of fiduciary duty claim.

With respect to the claim that McNair conspired to induce ANSER to terminate its agreement with Grubb & Ellis, the Court agrees with Plaintiff that there is a genuine issue of material fact. As discussed above with respect to the breach of contract claim against McNair, Plaintiff has identified evidence that shows that McNair engaged in discussions regarding a possible transition of the Tenant Representation Agreement to Avison Young while he was a Grubb & Ellis employee.

However, with respect to the claim that McNair solicited ANSER to enter into a brokerage agreement with Avison Young, the Court agrees with the Avison Young Defendants. Plaintiff has not identified any evidence regarding attempts by McNair himself to solicit ANSER to transition the brokerage agreement.

Finally, with respect to the claim regarding McNair directing the Skyline commission, Plaintiff has identified no evidence that McNair was involved in any way with directing the

payment of the commission. Plaintiff's statement that it "defies belief" that McNair would have not had a hand in directing the commission is simply speculation. At the summary judgment stage, it is necessary for Plaintiff to point to evidence in the record in order to prevail; simple speculation is not enough. For that reason, the Court need not address the Avison Young Defendants' argument that post-employment conduct cannot constitute a breach of fiduciary duty.

In sum, Plaintiff's breach of fiduciary duty claim against McNair survives only to the extent that Plaintiff claims that McNair conspired to induce ANSER to transition its arrangement from Grubb & Ellis to Avison Young.[13]

### 2.  Roehrenbeck

Plaintiff claims that Roehrenbeck breached his fiduciary duty to Grubb & Ellis—his onetime employer—by conspiring to induce ANSER (1) to terminate its Agreement with Grubb & Ellis and (2) to direct the Skyline commission to Avison Young instead of to Grubb & Ellis. *See* Am. Compl. ¶ 110. The parties' arguments parallel their arguments with respect to McNair. The Avison Young Defendants argue that Plaintiff has identified no evidence of a breach by Roehrenbeck, and they also argue that post-employment conduct cannot constitute a breach of fiduciary duty. As above, Plaintiff responds that it has identified such evidence.

With respect to Roehrenbeck, the answer is clear: Plaintiff has identified no evidence whatsoever that Roehrenbeck was involved with any discussions that could constitute conspiring

---

[13] In their Reply, the Avison Young Defendants' state—without any citation to legal authority— that any actions by McNair to "conspire" with Peyton to transition the Tenant Representation to Avison Young could not constitute a breach of fiduciary duty in light of the collaborative nature of the relationship between the firms and the brokers. The Court will not address this argument as it was not raised in the initial brief supporting the Avison Young Defendants' motion for summary judgment and because defendants have provided no legal authority to support this position even in their Reply.

to induce ANSER to terminate its agreement or to direct the Skyline commission to Avison

Young. Remarkably, and notably, Plaintiff does not even mention any actions taken by

Roehrenbeck in responding to defendants' breach of fiduciary duty argument in opposing their

motion for summary judgment. Because the Court can find no evidence to support the breach of

fiduciary duty claim against Roehrenbeck, there is once again no need for the Court to consider

whether post-employment conduct can constitute a breach of fiduciary duty. The Court grants

summary judgment to the Avison Young Defendants in full on this claim.

### F.  Trade Secrets

Plaintiff next claims that defendants McNair and Roehrenbeck violated the Virginia

Uniform Trade Secrets Act by misappropriating confidential records and proprietary information

belonging to Grubb & Ellis and providing that information to Avison Young. Plaintiff further

claims that Avison Young violated the Virginia Uniform Trade Secrets Act through its acquisition

and use of trade secrets belonging to Grubb & Ellis. The parties have stipulated that the only

trade secrets at issue are the "datapoints" provided to Peyton through collaboration regarding the

ANSER account. The Avison Young Defendants argue, first, that Plaintiffs have not identified

the trade secrets in question with the requisite specificity and, second, that Plaintiff's voluntary

disclosure of the information to Peyton, an affiliate of a competitor firm, without an agreement

protecting that information, bars the trade secrets claim. Plaintiff responds that it has identified

the trade secret in question with sufficient specificity and that disclosure to Peyton does not bar a

trade secrets claim because of the nature of that relationship.

The Court first turns to the question of specificity. "A plaintiff must identify, with

particularity, each trade secret it claims was misappropriated." *MicroStrategy Inc. v. Bus.*

*Objects, S.A.*, 331 F. Supp. 2d 396, 418 (E.D. Va. 2004). "This must be done to allow the finder

of fact to distinguish that which is legitimately a trade secret from other information that is simply confidential but not a trade secret, or is publicly available information." *Id.* Here, the only secret that Plaintiff identifies with particularity is the mere existence of ANSER's relationship with Grubb & Ellis. *See* Pl.'s AY Opp'n at 31. Yet, Plaintiff has identified no evidence in the record suggesting that this relationship was kept secret. While Plaintiff references various duties of confidentiality, it never identifies how those duties would prevent a party from disclosing the existence of ANSER's relationship with Grubb & Ellis. Indeed, as the Avison Young Defendants point out, that relationship was disclosed through Grubb & Ellis' representation of ANSER in its real estate search. In addition, while the parties stipulated that the claimed secrets were limited to the information that was passed to Peyton through his collaboration with Grubb & Ellis, Plaintiff never identifies the secrets themselves that were transmitted to him. Having failed to do so, Plaintiff's misappropriation of trade secrets claim fails. For this reason, the Court need not consider the parties' arguments about whether disclosures to Peyton remove such information from the universe of potential trade secrets, and the Court grants summary judgment to all of the defendants on this claim.

## G. Statutory Conspiracy

The Court now turns to Plaintiff's final claim—a statutory conspiracy claim against each of the Avison Young Defendants for conspiring to injure Plaintiff's trade, business and reputation. *See* Am. Compl. ¶ 124.

The Virginia conspiracy statute requires a plaintiff to prove (1) concerted action, *see Simmons v. Miller,* 544 S.E.2d 666, 677 (Va. 2001); (2) legal malice, *id.* at 677; and (3) causally related injury, *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 325 (W.D. Va. 2007), *aff'd sub nom. Schlegel v. Bank of Am., NA*, 258 F. App'x 543 (4th Cir. 2007). In other words, "the plaintiff

must prove (1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business, and (2) resulting damage to plaintiff." *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 596 (Va. 1984). However, "[i]t is not necessary for a plaintiff to prove that the defendant conspirators acted with actual malice, i.e., ill-will, hatred, or spite directed toward the plaintiff." *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014) (citing *Commercial Bus. Sys., Inc. v. BellSouth Servs.*, 453 S.E.2d 261, 266–67 (Va. 1995)). "Rather, a plaintiff must establish by clear and convincing evidence only that the conspirators acted with legal malice, i.e., 'intentionally, purposely, and without lawful justification.' " *Id.* (quoting *Commercial Bus. Sys., Inc.*, 453 S.E.2d at 267). *Accord Northern Va. Real Estate v. Martins*, 720 S.E.2d 121, 133 (Va. 2012).

As an initial matter, while Plaintiff brings this claim against all of the Avison Young Defendants, they have identified no actions whatsoever taken by any defendants other than McNair and Peyton as the basis for this claim. The Court, therefore, only looks to those two defendants in determining whether this claim survives the Avison Young Defendants' summary judgment motion. Next, it is critical that the Court, above, determined that the *only* other claims in this action that survive summary judgment are the breach of contract claim against McNair and Roehrenbeck and the breach of fiduciary duty claim against McNair (solely with respect to the allegation that he conspired to transition the Tenant Representation Agreement to Avison Young). A breach of contract cannot serve as the basis for a civil claim for statutory conspiracy under Virginia Code § 18.2-500. *Station #2, LLC v. Lynch*, 695 S.E.2d 537, 541 (Va. 2010). Accordingly, the only possible basis for the statutory conspiracy claim is the breach of fiduciary duty claim against McNair. *See id.* at 542 (breach of fiduciary duty can serve as basis for

statutory conspiracy claim). This conclusion reveals a fundamental difficulty with the statutory conspiracy claim.

A statutory conspiracy claim requires a showing that two or more people "combined, associated, agreed, mutually undertook, or concerted together" in conduct that was "intentional[], purposeful[], and without lawful justification." *Simmons*, 544 S.E.2d at 677. That is, to survive summary judgment on this claim, Plaintiff must provide evidence that two or more persons engaged in conduct without lawful justification. Indeed, in *Simmons*, after concluding that, with respect to *one* party to a supposed conspiracy, "clearly, the evidence is sufficient as to [that party] to satisfy the requirement of showing that she acted intentionally, purposefully, and without lawful justification," the Supreme Court of Virginia stated that "it is also necessary to prove that [another party to the putative conspiracy] combined, associated, agreed, mutually undertook, or concerted together with [the first conspirator] in such conduct." *Id.* The Supreme Court of Virginia then proceeded to analyze whether the second party's conduct *independently* satisfied the requirement of conduct that was intentional, purposeful, and without lawful justification. *Id.* After concluding that evidence of such conduct was insufficient, the court concluded that the plaintiff had not provided sufficient evidence of a statutory conspiracy claim against *any party*— including the party for which there was clear evidence of actions that were purposeful, intentional, and without lawful justification.

In short, a Virginia statutory conspiracy claim requires proof that *multiple* parties acted together when each of those parties has taken one or more actions that is intentional, purposeful, and without lawful justification. Here, even if Plaintiff can satisfy these requirements with respect to McNair, Plaintiff cannot satisfy these requirements with respect to Peyton. In light of the Court's conclusions regarding the other claims against Peyton, the Court concludes that

Plaintiff has not identified evidence in support of any action by Peyton without lawful justification. Absent such evidence, Plaintiff's statutory conspiracy claim cannot survive summary judgment. Accordingly, the Court grants summary judgment to the Avison Young Defendants on the statutory conspiracy claim.

## H.  Damages

Finally, the Court turns to the argument by defendants that Plaintiff has not identified sufficient evidence of the amount of damages. The Court concludes that Plaintiff has provided sufficient evidence pertaining to the commission fee to satisfy its minimal burden at the summary judgment stage—to show that it was damaged, not to show that the amount of damages precisely.[14] *See Parr v. Ebrahimian*, 70 F. Supp. 3d 123, 133 (D.D.C. 2014); *Armenian Genocide Museum & Memorial, Inc. v. Cafesjian Family Foundation,* 691 F. Supp. 2d 132, 153 (D.D.C. 2010) ("[I]n order to survive a motion for summary judgment based on the asserted insufficiency of proof of damages, a plaintiff need not, at this stage, show the amount of damages; he is obligated only to show that they exist and are not entirely speculative.") (citation omitted); *Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 732 S.E.2d 690, 699 (Va. 2012).

*       *       *

In sum, the Court concludes that Plaintiff's fiduciary duty claim against McNair (with respect to conspiring to induce ANSER to transition the Tenant Representation Agreement to Avison Young) and the breach of contract claims against McNair and Roehrenbeck survive summary judgment. With respect to all other claims, the Court grants summary judgment to the defendants.

---

[14] Of course, this in no way relieves Plaintiff of its burden at trial of proving damages to the extent required by the applicable bodies of law.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant ANSER's [125] Motion for Summary Judgment and GRANTS IN PART and DENIES IN PART the Avison Young Defendants' [127] Motion for Summary Judgment. Specifically, the Court GRANTS the Avison Young Defendants' motion—and grants summary judgment in full—with respect to the claim for tortious interference with contract (count II); the unjust enrichment claim (count III); the breach of contract claim against Joseph Peyton (count VI); the breach of fiduciary duty claim against Roehrenbeck (count VIII); the misappropriation of trade secrets claim (count IX); and the Virginia statutory conspiracy claim against the Avison Young Defendants (count X). The Court DENIES the Avison Young Defendants' motion as to the breach of contract claims against McNair (count IV) and Roehrenbeck (count V). Finally, with respect to the breach of fiduciary duty claim against McNair (count VII), the Court GRANTS the Avison Young Defendants' motion for summary judgment as to the claim that McNair directly solicited ANSER to transition the Tenant Representation Agreement and the claim that McNair directed the commission payment away from Grubb & Ellis and to Avison Young; the Court DENIES the motion for summary judgment as to the claim that McNair conspired to induce ANSER to terminate its agreement with Grubb & Ellis.

An appropriate Order accompanies this Memorandum Opinion.

Dated: February 26, 2016

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge