UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| G&E REAL ESTATE, INC., <br>     Plaintiff <br> v. <br> AVISON YOUNG–WASHINGTON, D.C., LLC, *et al.*, <br>     Defendants | Civil Action No. 14-418 (CKK) |

**MEMORANDUM OPINION and ORDER**
(March 30, 2016)

Before the Court is movant Offit Kurman, P.A.'s [130] Second Motion for Payment of Legal Fees and Electronic Discovery Vendor Fees in Compliance with Order Granting Motion for Subpoena Issued to Vornado/Charles E. Smith, L.P. Dated April 2, 2014. This motion pertains to a subpoena served on Vornado by Plaintiff in connection with the lease by Vornado, a landlord, to Defendant Analytic Services. The Court notes that, while Vornado is not a party to this case and does not appear to have any financial stake in its outcome, neither is Vornado a stranger to this case. Indeed, it is Vornado's lease to Defendant Analytic Services that is at the core of this case. Offit Kurman represented Vornado in the matters relating to the subpoena and now seeks to recover attorney's fees in the amount of $145,843.50 for the work that it did on Vornado's behalf. Offit Kurman also requests that Plaintiff be required to pay the invoices issued by LightSpeed LLC, the electronic discovery vendor used by the parties. The invoices directed to Offit Kurman amount to $2,010.94.[1] Offit Kurman seeks to require Plaintiff to bear all of these

---

[1] Offit Kurman also submitted invoices by LightSpeed that had been directed to Plaintiff's counsel. But those invoices are not properly the subject of this motion because they were neither directed to the non-party Vornado or to Vornado's counsel.

1

expenses under Federal Rule of Civil Procedure 45(d)(2)(ii), which contains certain protections for non-parties who have been served with a subpoena.

Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court GRANTS IN PART and DENIES IN PART Offit Kurman's [130] Second Motion. The Court will GRANT the motion as to the $2,010.94 in invoices, requiring Plaintiff to pay those invoices, and as to $1,137.50 in attorney's fees, requiring Plaintiff to reimburse Vornado for those services. The Court otherwise DENIES Offit Kurman's request.

## I. BACKGROUND

The Court has previously set out and discussed the facts underlying this case. *See generally G&E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, No. CV 14-418 (CKK), 2016 WL 777908 (D.D.C. Feb. 26, 2016). Furthermore, given the issues presented in the pending motion, there is no need to present the factual background of this case prior to addressing the issues raised in the pending motion. Instead, the Court reserves presentation of the relevant background for the issues discussed below.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena on a non-party. However, if that non-party objects and if a court orders compliance with the subpoena, the court

---

[2] The Court's consideration has focused on the following documents:
- Offit Kurman, P.A.'s Second Motion for Payment of Legal Fees and Electronic Discovery Vendor Fees in Compliance with Order Granting Motion for Subpoena Issued to Vornado/Charles E. Smith, L.P. Dated April 2, 2014 ("Mot."), ECF No. 130;
- Pl.'s Opp'n to Second Mot. for Payment of Legal Fees and Electronic Discovery ("Pl.'s Opp'n"), ECF No. 134; and
- Reply of Offit Kurman, P.A., to Opp'n of Pl. G&E Real Estate, Inc., to Second Mot. for Payment of Legal Fees and Electronic Discovery Vendor Fees ("Reply"), ECF No. 136.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

"must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(ii). Under Rule 45, as significantly revised in 1991, "the questions before the district court are whether the subpoena imposes expenses on the non-party, and whether those expenses are 'significant.' " *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) (quoting Fed. R. Civ. P. 45(c)(2)(B) (1991)). "If they are, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.' " *Id.* In other words, if expenses are significant, the district court must shift the expenses above the level of "significance" to the party serving the subpoena.

A final point is regrettably necessary regarding the text of the rule itself. Both parties persist in quoting the 1991 version of Rule 45 which required protection from "significant expense resulting from *inspection and copying* commanded." *Id*. (emphasis added). The final words in this provision of Rule 45 appear to have been amended several times since 1991, ultimately resulting in the simple language, "resulting from compliance," that is now in effect. Fed. R. Civ. P. 45(d)(2)(ii). It is true that the decision of the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") in *Linder* remains the principal case on the subject of Rule 45 in this Circuit. However, the language of this rule that this Court must apply is the current language, not the language from a quarter-century ago. Both parties' reliance on the final words of the applicable clause in the 1991 rule is ill-advised, particularly insofar as they suggest that the former words have particular relevance to their arguments. That said, the Court concludes that the change in the provision ultimately has no material impact on the outcome of the pending motion and will proceed to apply Rule 45 in its current form.

### III. DISCUSSION

Before proceeding to the substance of the pending motion, the Court notes that it appears unusual that the law firm Offit Kurman is seeking fees on its own behalf, not on behalf of its client, Vornado, albeit in connection to work that it did for that client. That is unusual because Rule 45 affords protections to non-parties who have been served with subpoenas, not to their lawyers. In other words, the rule provides no direct protection to Offit Kurman. In any event, because Offit Kurman seeks fees for work done for Vornado pertaining to the subpoena, the Court addresses the motion on the merits.

The primary question facing the Court in this motion is whether the expenses for which Offit Kurman seeks reimbursement constitute "significant expense[s] resulting from compliance." Fed. R. Civ. P. 45(d)(2)(ii). In terms of the dollar figure of the total request—$145,843.50 in attorney's fees and $2,010.94 in LightSpeed invoices—there is no doubt that this amount would be significant. *See Linder*, 251 F.3d at 191 (having "no trouble" concluding that $199,537.08 in expenses are significant and relying on case where $9,000 was deemed significant). However, that is not the end of the inquiry. The Court must determine whether these are "expense[s] resulting from compliance" in the first instance.

The Court understands Plaintiff to be arguing, essentially, that (1) attorney's fees are *per se* non-compensable and (2) the amount of attorney's fees are grossly excessive and do not qualify as expenses that *result* from the required compliance with the subpoena. As to the former, the Court agrees with Offit Kurman that attorney's fees *may* be compensable. But as to the latter, the Court agrees with Plaintiff that the fees requested are excessive and that it cannot be said that the fees, as a whole, resulted from the requirement that Vornado comply with the subpoena issued. Pursuant to the Court's analysis below, the Court concludes that all but a small fraction of

the fees requested are unreasonable and thus non-compensable. The Court concludes that the small subset of fees that resulted from compliance, together with the invoices issued to Offit Kurman, are significant and warrant compensation.

### A.  Legal Framework under Rule 45

The Court begins with text of Rule 45. As stated above, a non-party ordered to comply with a subpoena must be protected from any "significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(ii). It is critical, therefore, that only expenses that result from, and therefore, are caused by, the order of compliance are potentially compensable. Simply because a non-party undertook certain tasks and incurred associated expenses in the aftermath of an order compelling compliance with a subpoena does not mean that those costs resulted from that order. In other words, only reasonable expenses are compensable. An unreasonable expense, even undertaken in some sense as a response to a subpoena, does not result from that subpoena. Instead, it results from whatever set of decisions by and on behalf of the non-party led to those unreasonable expenses being incurred. This understanding—that only *reasonable* expenses qualify under Rule 45—has been adopted by a significant number of courts across the country. *See*, *e.g.*, *In re Application of Michael Wilson & Partners, Ltd., for Judicial Assistance Pursuant to 28 U.S.C. 1782*, 520 F. App'x 736, 739 (10th Cir. 2013) (citing *United States v. Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 371 n.9 (9th Cir. 1982)) ("Although Rule 45(c)(2)(B)(ii) protects a nonparty subpoena respondent from 'significant expense,' expenses, including attorney's fees, must be reasonable."); *In re Modern Plastics Corp.*, 536 B.R. 783, 788 (Bankr. W.D. Mich. 2015) (only reasonable expenses compensable); *United States v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014) ("But, one thing is certain: an unreasonably incurred expense is not an expense 'resulting from compliance.' "); *In re:*

*Propulsid Products Liability Litigation*, No. MDL1355, 2003 WL 22341310, at *2 (E.D. La. Sept. 3, 2003) (same).

This same analysis is as applicable to attorney's fees as it is to other expenses. Notwithstanding Plaintiff's argument to the contrary, the weight of authority indicates that attorney's fees are not *per se* excluded from potentially compensable expenses. *See In re Application of Michael Wilson & Partners*, 520 F. App'x at 739; *In re Modern Plastics Corp.*, 536 B.R. at 788; *Bell Inc. v. GE Lighting, LLC*, No. 6:14-CV-00012, 2014 WL 1630754, at *12 (W.D. Va. Apr. 23, 2014); *Georgia-Pac. LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187, 190 (S.D. Ohio 2010). However, such fees are only compensable if they are reasonable. *See In re Application of Michael Wilson & Partners*, 520 F. App'x at 739; *McGraw-Hill Companies*, 302 F.R.D. at 536; *In re Modern Plastics Corp.*, 536 B.R. at 788. These conclusions follow directly from the text of the rule, which does not suggest any basis to distinguish, categorically, between attorney's fees and other expenses. But the rule also requires that only expenses reasonably incurred as a result of compliance with a subpoena are compensable.

Before applying this standard to the case at hand, the Court turns briefly to Plaintiff's argument that attorney's fees are not compensable expenses because the "[r]ule speaks of protection of expense resulting from the *inspection and copying* sought." Pl.'s Opp'n at 6 (emphasis in original). This argument fails at the starting gate because, as explained above, the current version of the rule does not include this language. The rule, again, states that a non-party must be protected from "significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(ii). In other words, the rule says precisely what Plaintiff says it does not say. *Compare* Pl's Opp'n at 6 ("It could have spoken in terms of protection from expenses resulting from the subpoena. It did not."). The Court also notes that Offit Kurman, in its reply, never pointed out

that this argument by Plaintiff lacks any foundation. Indeed, it was Offit Kurman that premised its request on the older version of Rule 45 in the first instance. Keeping in mind that it was Offit Kurman who initially led the parties down this problematic path, the Court moves on to apply the current incarnation of Rule 45 to the circumstances presented in the pending motion.

**B. Attorney's Fees**

It certainly is the duty of Plaintiff, who served the subpoena on Vornado, to avoid imposing unwarranted expenses on Vornado. *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."). But that obligation does not mean that a Plaintiff may be charged with expenses that cannot be said to be reasonable and to be caused by an order requiring compliance with such a subpoena. As explained above, the rule itself does not allow such a result. The Court concludes that Offit Kurman has not shown that the fees for which it seeks compensation were reasonable and that they resulted from compliance with the subpoena.

All issues pertaining to Vornado's compliance with the subpoena issued by Plaintiff, including issues related to the fees associated with that subpoena, have been vigorously contested. Indeed, as Plaintiff argues, Vornado has fought the subpoena vigorously since the issue first arose. The Court need not walk through the history of this case in full; instead, reviewing a few milestones along this road more than adequately supports the Court's conclusion that the expenses for which Offit Kurman seeks compensation are not reasonable.

On September 22, 2014, Vornado moved to quash Plaintiff's subpoena, and Plaintiff subsequently cross-moved to enforce the subpoena. The Court then granted Plaintiff's motion to enforce the subpoena, denied the motion to quash in part, and held in abeyance the request for

fees. *See* Order dated October 8, 2014, ECF No. 99. Several month later, Offit Kurman filed its first motion for fees, ECF No. 109, and Plaintiff filed a motion to compel, ECF No. 113.[3] At a Status Hearing held on June 17, 2015, the Court noted that the privilege log produced by Vornado was insufficient and, that same day, the Court ordered the parties to meet and confer, in person, in order to attempt to narrow the issues in dispute. *See* Minute Order dated June 17, 2015. The Court also ordered Vornado to produce a new privilege log, after the conference, with respect to the materials that would remain at issue. *Id.* Counsel complied with this Court's order: on June 22, 2015, counsel for Plaintiff met with counsel for Vornado, at the offices of Offit Kurman. *See* Withdrawal of Motion, ECF No. 123. Indeed, as a result of that meeting, the parties resolved the issues regarding the disputed materials, and Plaintiff withdrew its motion to compel. *See id.*

What happened at that June 22, 2015, meeting is critical. Vornado and Offit Kurman offered to allow Plaintiff to review all of the 1900 documents then in dispute with a clawback arrangement. Reply at 11. Plaintiff's counsel reviewed all of those documents in one day. Pl.'s Opp'n at 5. Plaintiff's counsel determined that those documents "were largely duplicative and not material" and agreed to withdraw the motion to compel as to them. *Id.* Several additional documents were then produced by agreement. The parties' activities that one day resolved all of the remaining issues regarding the subpoena.

---

[3] The Court concluded that the first motion for fees was premature because there were remaining disputes, at that time, regarding Vornado's compliance with the subpoena. Accordingly, the Court denied Offit Kurman's first motion for fees without prejudice, and the Court stated that a renewed motion for fees could be filed upon resolution of the issues pertaining to the subpoena. *See* Minute Order dated April 8, 2015. Offit Kurman timely filed the renewed motion, which is now before the Court.

Offit Kurman argues in response that "no good deed goes unpunished" and describes Plaintiff's argument as "bemoaning that Vornado thereby avoided the further enormous expense of producing a privilege log with the detail needed to satisfy Plaintiff." Reply at 11. With respect to the latter point, it has no basis. As the Court previously determined, Vornado's original privilege log was insufficient. As a result, Vornado's additional efforts were not caused by the need to satisfy Plaintiff's whim, as Offit Kurman suggests; they were necessary in order to provide a privilege log that could justify Vornado's assertion of privilege regarding *numerous* documents. The responsibility for additional proceedings resulting from Vornado's failure to properly assert its privileges falls on Vornado and on Offit Kurman, not on Plaintiff. With respect to Offit Kurman's suggestion that "no good deed goes unpunished," that could not be farther from the truth. The fact that the parties were ultimately able to work out an arrangement through which Plaintiff's counsel could assess the documents withheld suggests that such an arrangement would have been possible far earlier in these contentious proceedings. Other than Offit Kurman's lament regarding the futility of good deeds, Offit Kurman has never suggested otherwise. Sitting down with a clawback arrangement appears to have been wise and efficient when counsel finally did so, and doing so earlier could have yielded even greater benefits. Indeed, there is nothing in the record that suggests that the parties could not have resolved these issues amicably with far less effort.

Concomitantly, the efforts that Offit Kurman undertook to litigate fiercely and to expend significant resources on the document review effort are not "significant expenses resulting from compliance." Therefore, they are, in large part, not compensable. It appears from the record that—for whatever reason—Vornado and its attorneys decided to litigate issues related to the subpoena zealously. And they appear to have done so with no eye towards minimizing their

expenses or towards working cooperatively with Plaintiff's counsel to resolve the disputed issues. Plaintiff has represented as much, and Offit Kurman has done nothing to contest that view. Moreover, the Court's own experience with this litigation over the past several years confirms that assessment, as well.

Offit Kurman has provided no reason why it could not have made the offer to allow Plaintiff to review documents with a clawback arrangement prior to engaging in the expensive and time-consuming privilege review. Instead, they contested the subpoena vigorously and insisted on painstakingly reviewing the documents in question. It is Vornado's right to do so if it believes that doing so serves its own interests, but it may not then charge Plaintiff with the costs of this effort.[4] *See McGraw-Hill Companies*, 302 F.R.D. at 536 (quoting *O'Chesky v. Koehler* (*In re Am. Hous. Found.*), No. 12–cv–00222, 2013 Bankr. LEXIS 2268, at *13, 2013 WL 2422706, at *3 (N.D. Tex. June 4, 2013)) ("[T]he Court is skeptical that 'services provided by an attorney to a non-party for the non-party's sole benefit and peace of mind' can be counted as 'expenses.' In other words, Rule 45 does not cut a blank check to non-parties—unnecessary or unduly expensive services do not 'result from compliance' and, therefore, do not count as 'expenses.' "). Notably, the Court's review of the numerous entries in Offit Kurman's billing records suggests that the entire effort for which Offit Kurman now seeks compensation was guided by this overall strategic approach to the subpoena issue—fierce litigation and expensive document review—rather than a creative and collaborative approach to resolving the issues at hand.

---

[4] The fact that Vornado had a right to take this approach does not mean that doing so is advisable, even aside from the merits of this fee shifting motion. *Cf.* Fed. R. Civ. P. 1 (The rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In particular, the parties could readily have sat down at the beginning of the subpoena dispute to discuss potential terms to use for a search of electronic information. It does not appear that they even attempted to do so. Distilled to its essence, Plaintiff's subpoena request is a fairly narrow one, pertaining to one tenant, one leased facility, and one leasing transaction. The Court notes that an agreement as to search terms likely would have enabled Vornado to conduct a more targeted search that would have substantially minimized the costs to all involved. Indeed, doing so may very well have obviated any review of the large volume of irrelevant materials that were ultimately generated by Vornado's search. The failure of Vornado and Offit Kurman to suggest such a process confirms that the work for which Offit Kurman seeks compensation was not reasonably caused by compliance with the subpoena.

It would have been a best practice for Plaintiff to have early, if not often, suggested collaborative ways to resolve the issue of the subpoena, such as allowing for review by Plaintiff's counsel with a clawback agreement, as eventually took place. The record does not reflect that Plaintiff did so. But it also does not reflect that Plaintiff would have been hesitant to agree to such an arrangement should one have been proposed. Ultimately, Plaintiff's failure to suggest alternative resolutions to the subpoena disputes does not transform the approach that Vornado and Offit Kurman took into a reasonable one. So, too, Plaintiff's failure to present alternatives does not transform Offit Kurman's fees into reasonable ones that can be considered to *result from* Vornado's compliance with the subpoena.

In light of the foregoing analysis, the Court concludes that the vast majority of Offit Kurman's fees are not compensable, from the early response to the subpoena through the laborious document review process through the preparation of motions for fees. However, the Court concludes that certain discrete activities are reasonable, such as the hours expended by

Offit Kurman to enable Plaintiff's counsel to sit down and review the contested documents. *See* Motion ¶ 74. However, it is difficult to parse out these expenses. For instance, in Offit Kurman's motion, Offit Kurman describes the tasks associated with responding to Plaintiff's motion to compel and related activities, which the firm refers to as Task 008. *See* Mot. ¶¶ 50-77. In the motion, Offit Kurman also lists the hours for which it seeks compensation associated with Task 008, broken out by attorney. *See id.* at 17. In exhibit A to the motion, the individual billing entries are sorted first by attorney and then usually-but-not-always by date. *See, e.g.*, Mot., Ex. A (entries for Stephen Nichols). To determine which individual spent time on activities that may be compensable, it is necessary to examine the time billed by each of the seven individuals who billed time under Task 008. However, it is difficult to determine how or why responsibilities were divided among the attorney and paralegals working on individual tasks, and therefore, it is difficult to determine to what extent any work was duplicative. That said, cross-referencing those billing entries with Offit Kurman's description in the motion of the activities under each task, it appears the following expenditures of time were associated with the ultimate resolution to disputes regarding the subpoena:

- 2.3 hours billed by Gregory Johnson on June 22, 2015;
- 0.2 hours billed by Bryn Sherman on June 22, 2015 ("Review docs to be copied by Gill [Plaintiff's counsel]") ;
- 0.3 hours billed by Sherman on June 23, 2015 ("Review docs provided by Gill"); and
- 0.2 hours billed by Sherman on June 24, 2015 ("Review e-mail of Tom with 3 docs Gill took").

With respect to these hours, the Court concludes that they are "expenses resulting from compliance" with the subpoena. At the rates billed by Vornado's attorneys, these entries amount to $1,137.50. (The Court returns to whether these expenses are "significant" below, after

considering the remainder of issues pertaining to the attorney's fees sought, as well as the invoices from LightSpeed.)

Other than these hours, the Court has been unable to isolate any hours that solely pertain to supporting the ultimately-agreed-upon review mechanism. It may be that some hours, such as those required to set up the review platform with LightSpeed, the vendor, would be compensable. However, it is simply impossible to distinguish those hours that would have been necessary to enable a review/clawback arrangement from the hours spent on non-compensable tasks. As stated above, it appears from the record that Offit Kurman's actions, as a whole, were colored by a litigious approach to resolving this dispute. Moreover, it appears that, with minimal exceptions, setting up the document review system would not require attorneys billing at full attorney rates. For these reasons, the Court cannot say with any assurance that any of the other time billed by Vornado's attorneys is reasonable and could be considered an "expense resulting from compliance."[5]

**C. Other Expenses (Invoices)**

Through the pending motion, Offit Kurman also seeks to force Plaintiff to pay several invoices from LightSpeed, the electronic discovery vendor used by the parties. As noted above, the several invoices directed to *Plaintiff's counsel* are outside the scope of this motion. There is

---

[5] The parties dispute whether the factors presented by the district court in *In re The Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992), remain relevant to the Court's analysis under Rule 45 in light of the D.C. Circuit's decision in *Linder*. The Court need not resolve that dispute today because the application of those factors would not alter the Court's conclusion that only a small fraction of the fees in this case are compensable. In particular, as noted above, Vornado's lease to Defendant Analytic Services is at the core of this case. The Court would conclude that the fact of this relationship would outweigh the fact that this case is not particularly in the public interest and the fact that both parties appear to have the ability to pay the fees in question. *See id.* Assessing all of the *Exxon Valdez* factors would, therefore, not change the result in this case.

no reason to believe that somehow Offit Kurman or Vornado will be charged with paying those bills. Indeed, the parties have represented that Plaintiff has agreed to pay all of LightSpeed's bills, and the Court has no reason to doubt that it will do so. That said, the Court considers the three bills addressed to attorneys at Offit Kurman to be "expenses resulting from compliance" with the subpoena. These three bills total $2,010.94. Next the Court considers whether these expenses, together with the minimal allowable attorney's fees are "significant" and, therefore, warrant compensation.

*   *   *

In sum, the Court has concluded that $1,137.50 in attorney's fees and $2,010.94 in other costs constitute "expenses resulting from compliance" with Plaintiff's subpoena, for total expenses of $3,148.44. The only question left is whether these expenses, taken together, are "significant" for the purposes of Rule 45. The Court concludes that they are significant. The parties have not devoted any of their briefing to the precise thresholds for "significance" because they were, reasonably, focused on the much larger amounts requested by Offit Kurman. That said, the Court notes that the D.C. Circuit in *Linder* cited favorably a district court decision from the Northern District of Texas in which that court had concluded that $9,000 in expenses were significant. *See Linder*, 251 F.3d at 182. Although $3,148.44 is undoubtedly substantially less than $9,000, it is not orders of magnitude lower, such that this Court would conclude that it is not significant. Indeed, a district court in the Western District of Louisiana concluded that even $43 in copying costs, together with postage (for sending 11 sheets of paper), was significant. *See Broussard v. Lemons*, 186 F.R.D. 396, 398 (W.D. La. 1999). Accordingly, the Court concludes that Vornado must be protected from these expenses under Rule 45(d)(2)(ii). Therefore, the Court

awards Offit Kurman $1,137.50 in attorney's fees, which Plaintiff must pay. In addition, Plaintiff must pay LightSpeed for the three bills directed to Vornado's attorneys.[6]

As a final matter, the Court notes that it is not within the scope of this Court's authority to determine whether Vornado should pay its attorney's fees or whether the law firm of Offit Kurman should bear those fees on its own. Insofar as there is any such dispute, it is between Offit Kurman and its client to resolve in accordance with their private arrangements, and the Court expects it will be resolved in the ordinary course of business.[7]

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby **ORDERED** that Offit Kurman's [130] Second Motion for Payment of Legal Fees and Electronic Discovery Vendor Fees is GRANTED IN PART and DENIED IN PART.

That motion is **GRANTED** insofar as the Court **AWARDS** Offit Kurman $1,137.50 in attorney's fees, to be paid by Plaintiff, and **ORDERS** Plaintiff to pay the three LightSpeed bills addressed to Offit Kurman, which amount to $2,010.94. The motion is otherwise **DENIED**.

**SO ORDERED.**

Dated: March 30, 2016

                                                                                    /s/
                                                       COLLEEN KOLLAR-KOTELLY
                                                       United States District Judge

---

[6] No party has represented that the bills addressed to Offit Kurman have been paid. If Plaintiff has already paid these bills, there is no remaining obligation to do so. By contrast, if Offit Kurman has, by chance, paid those bills, Plaintiff shall reimburse Offit Kurman for the amounts paid. The Court expects the parties to resolve amicably any questions arising from such eventualities.

[7] In light of the Court's conclusion that only a minimal portion of Vornado's expenses are compensable, there is no need to address Plaintiff's more speculative theories about how Vornado could receive reimbursement for its attorney's fees in this case, such as by relying on a putative (but unidentified) indemnification clause.