# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| G&E REAL ESTATE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>AVISON YOUNG–WASHINGTON, D.C., LLC, *et al.*,<br><br>    Defendants. | Civil Action No. 14-418 (CKK) |

## MEMORANDUM OPINION AND ORDER
(September 28, 2018)

Plaintiff G&E Real Estate Inc. d/b/a Newmark Grubb Knight Frank ("Plaintiff") seeks leave to amend its First Amended Complaint in response to several of this Court's decisions and in preparation for trial. Defendants Bruce B. McNair ("McNair") and David Roehrenbeck ("Roehrenbeck") (collectively, "Defendants")[1] oppose on a variety of grounds. Upon consideration of the briefing,[2] the relevant legal authorities, and the record as a whole, the Court shall **GRANT-IN-PART and DENY-IN-PART** Plaintiff's [217] Motion for Leave to File Second Amended Complaint. Plaintiff may file a version of its Second Amended Complaint that omits Counts I-III, VI, and VIII-X, as to which this Court previously granted summary judgment

---

[1] The Court previously granted summary judgment to the other three Defendants, Analytic Services, Inc. ("ANSER"), Avison Young—Washington, D.C., LLC ("Avison Young"), and Joseph F. Peyton ("Peyton"), as to all remaining claims asserted against them. *See* Order, ECF No. 137; Mem. Op., ECF No. 138.

[2] The Court's consideration has focused on the following documents:

- Mem. in Supp. of Mot. for Leave to File 2d Am. Compl., ECF No. 217-2 ("Pl.'s Mem.");
- Defs.' Opp'n to Mot. for Leave to File 2d Am. Compl., ECF No. 218 ("Defs.' Opp'n"); and
- Pl.'s Reply in Supp. of Mot. for Leave to File 2d Am. Compl, ECF No. 219 ("Pl.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

against Plaintiff, and omits the specific theories contained in Count VII that the Court also rejected at summary judgment.

## I. BACKGROUND

On February 26, 2016, the Court summarized the background to this case when it resolved motions for summary judgment filed by McNair, Roehrenbeck, and other then-defendants. *See generally* Mem. Op., *G&E Real Estate, Inc. v. Avison Young—Washington, D.C., LLC*, 168 F. Supp. 3d 147, 151-52 (D.D.C. 2016) (*G&E I*), ECF No. 138.[3] Going forward, Plaintiff's three remaining claims were limited to breach of contract claims against McNair and Roehrenbeck (Counts IV and V, respectively), as well as a narrow version of its breach of fiduciary duty claim against McNair (Count VII). *See G&E I*, 168 F. Supp. 3d at 169. Specifically, Count VII remained viable "as to the claim that McNair conspired to induce ANSER to terminate its agreement with Grubb & Ellis." *Id.* Relevant proceedings since the summary-judgment decision have included the denial of Plaintiff's motion for reconsideration, on August 18, 2016. Mem. Op. and Order, ECF No. 149.

Not long thereafter, Plaintiff substituted its counsel in this action. Pl.'s Request for Withdrawal and Substitution of Counsel, ECF No. 152. Amidst Plaintiff's trial preparations, new counsel realized that certain emails were not previously produced to Defendants, but should have been. *See* Mem. Op. and Order at 2-3, *G&E Real Estate, Inc. v. Avison Young—Washington, D.C., LLC*, 323 F.RD. 67, 68-69 (D.D.C. 2017) (*G&E II*), ECF No. 215. Ultimately, Plaintiff produced "approximately 16,000 emails from the mailbox of Defendant Bruce McNair (the 'McNair Emails'), which were stored on a computer server previously owned and operated by non-party Grubb & Ellis." *G&E II*, 323 F.RD at 67-68. Defendants sought sanctions in response, which the

---

[3] The Court shall denote two of its relevant decisions as *G&E I* and *G&E II*, although, for the avoidance of doubt, the Court observes that it has made other substantive decisions in this case as well.

2

Court denied. *See generally G&E II*, 323 F.RD. 67. The Court nevertheless determined that Defendants were entitled to the reopening of discovery—which previously closed on February 10, 2015—in order to mitigate purported prejudices associated with the belated production. *Id.* at 71; *see also id.* at 68 (citing Min. Order of Dec. 8, 2014)).[4] The Court denied without prejudice a number of the parties' other, mostly pretrial motions, which included an attempt by Plaintiff's new counsel to amend the First Amended Complaint. *Id.* Plaintiff would be permitted to "renew this motion before the close of the reopened discovery period," subject to a briefing schedule unless the parties agreed to the amendment. *Id.*

The parties indeed sought a briefing schedule, which the Court issued. Min. Order of Jan. 8, 2018. "In light of the parties' discovery disagreements, and the Court's understanding that its decision regarding the Second Amended Complaint may affect the scope and timeline of reopened discovery," the Court determined that Plaintiff's present motion should be briefed and decided before reopening the discovery contemplated by the Court's decision to deny sanctions. *Id.*

The Court shall consider any further background where relevant to its evaluation of Plaintiff's renewed attempt to amend the operative complaint. That motion is now fully briefed.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), captioned "Amendments Before Trial," a party is permitted to amend its complaint or other pleading "once as a matter of course within" certain alternative time periods. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* 15(a)(2). Rule 15 makes clear that when the court's leave is sought, that leave should be "freely give[n] . . .

---

[4] One discovery dispute, between Plaintiff and third-party Vornado/Charles E. Smith, L.P., continued past the February 10, 2015, deadline. *See* Min. Order of Mar. 23, 2015.

when justice so requires." *Id.*; *see Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (finding that leave to amend a complaint is within the court's discretion and "should be freely given unless there is a good reason . . . to the contrary"), *cert den.*, 520 U.S. 1197 (1997); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (noting that "it is an abuse of discretion to deny leave to amend unless there is sufficient reason").

One basis for seeking amendment may be to conform the operative complaint to the evidence produced during discovery. Under Rule 15(b), captioned "Amendments During and After Trial," "[a] party may move—*at any time, even after judgment*—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue." Fed. R. Civ. P. 15(b)(2) (emphasis added). Bearing in mind the caption, the Federal Rules contemplate that such a conforming amendment would be made, if at all, during or after trial "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent" at trial. *Id.* Yet, at least some authority reads the permissive language italicized above to "permit[ ] the motion [to amend under Rule 15(b)(2)] to be made throughout the entire period during which the action is in the district court." 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1494 (3d ed. 2010). Even if a court engaged in pretrial proceedings does not accept this invitation to formally consider amendment pursuant to Rule 15(b)(2), this rule provides support for granting leave to amend under Rule 15(a)(2) where such amendment would conform the pleadings to the evidence available before trial. Granting an amendment for this reason would, of course, remain within the Court's discretion under Rule 15(a) precedent in this jurisdiction. *See, e.g.*, *Firestone*, 76 F.3d at 1208.

"When evaluating whether to grant leave to amend [under Rule 15(a)(2)], the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint." *Howell v. Gray*,

843 F. Supp. 2d 49, 54 (D.D.C. 2012) (citing *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Courts that have found an undue delay in filing [a proposed amended complaint] have generally confronted cases in which the movants failed to promptly allege a claim for which they already possessed evidence." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9 (D.D.C. 2013). An amendment would be unduly prejudicial if it "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation"; it would "put [the opponent] to added expense and the burden of a more complicated and lengthy trial"; or it raises "issues . . . [that] are remote from the other issues in the case." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1487 (2d ed. 1990)) (internal quotation marks omitted). With respect to the futility of an amendment, a district court may properly deny a motion to amend if "the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (citing, e.g., *Foman*, 371 U.S. at 182). "With respect to bad faith, courts generally consider the length of the delay between the latest pleading and the amendment sought. However, delay alone is an insufficient ground to deny the motion unless it prejudices the opposing party." *Djourabchi*, 240 F.R.D. at 13 (citing Wright, Miller & Kane, *supra*, § 1488).

"Because amendments are to be liberally granted, the non-movant bears the burden of showing why an amendment should not be allowed." *Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008).

## III. DISCUSSION

The following analysis of Plaintiff's Motion is premised on the Court's assumption that all of Plaintiff's allegations are supported by evidence that surfaced during discovery, or in the mishandled tranche of McNair Emails that was produced to Defendants afterwards. *See, e.g.*, Pl.'s Mem. at 5 (alleging that "Defendants . . . have received all the documents on which the proposed amendments are based"). Accordingly, Defendants are purportedly on notice, already, of each of the allegations that Plaintiff develops in its latest proposed version of the complaint. At this pretrial stage of proceedings, Plaintiff's edits should indeed be limited to conforming the operative complaint to the evidence and the claims that remain for trial.

Also at the threshold, the Court disposes of Defendants' efforts to defend against Plaintiff's Motion based on an incorrect standard. Defendants argue that the Court should consider Plaintiff's Motion under Rule 16(b), because that rule purportedly applies to proposed amendments that fail to comply with a scheduling order. *See* Defs.' Opp'n at 7-9 (citing *Headfirst Baseball LLC v. Elwood*, 206 F. Supp. 3d 148, 152 (D.D.C. 2016)). The Court need not consider, however, the appropriate standard for a motion filed after a scheduled deadline. Rule 15(a) is the correct standard for a motion to amend a complaint that complies with the Court's schedule, as Plaintiff's Motion does. *See* Min. Order of Jan. 8, 2018. In the course of applying the Rule 15(a) standard, the Court nevertheless shall consider the basis for Defendants' argument that Plaintiff's proposed amendment is tardy.

Although Defendants have missed the mark as to the standard, the Court shall address Defendants' arguments to the extent that they bear on the Court's evaluation of the *Foman* factors below. *See Foman*, 371 U.S. at 182. The Court need not devote separate attention to the possibility of futility, as there is no argument that the proposed amendments could not survive a motion to

dismiss. *See In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d at 218. On the contrary, Defendants oppose Plaintiff's proposed amendments largely because of the perceived threat to Defendants' case. In light of the liberal standard embodied in Rule 15(a) and this Circuit's precedent, the Court shall find that Plaintiff has made the showing necessary to merit the Court's leave to amend, with some modifications that the Court shall specify below.

### A. Undue Delay

It is clear under the first *Foman* factor that Plaintiff has not unduly delayed its effort to amend its complaint this second time. After the Court rejected certain of the claims in Plaintiff's operative First Amended Complaint at summary judgment in February 2016, and denied reconsideration the following August, Plaintiff hired new counsel in December 2016. In January 2017, that counsel—jointly with Defendants' counsel—requested an amended scheduling order that would permit Plaintiff to propose amended pleadings to Defendants by the following March. *See* Consent Mot. for Leave to File Am. Proposed Scheduling Order *Instanter*, ECF No. 164, Ex. A. The Court granted that request. Am. Pretrial Scheduling and Procedures Order, ECF No. 165, at 6 ("Plaintiff's proposed Amendments to Pleadings due to Defendants" on March 17, 2017). Meanwhile, Plaintiff's new counsel uncovered the McNair Emails in March-April 2017 that previously were mishandled in this litigation and should have been produced to Defendants. Those emails resulted in the Court's finding, in October 2017, that Defendants were entitled to reopened discovery. *See G&E II*, 323 F.R.D. at 71. But the McNair Emails also may have assisted Plaintiff's effort to refine the allegations associated with its remaining claims. *See* Pl.'s Reply at 9 (attributing certain proposed edits to various sources, including the "belated production" (internal quotation marks omitted)). Shortly after the Court's decision in October 2017 to deny sanctions and permit reopened discovery, Plaintiff requested a briefing schedule for a renewed motion for leave to file

7

a second amended complaint. *See* Joint Disc. Plan, ECF No. 216, at 1-2. Plaintiff timely filed the pending motion pursuant to the schedule that the Court issued. *See* Min. Order of Jan. 8, 2018.

It is misleading for Defendants to imply that Plaintiff's Motion is not timely by citing the Court's [165] Pretrial Scheduling and Procedures Order. *See* Defs.' Opp'n at 8 (suggesting that Plaintiff proposes this Second Amended Complaint "after proposed amended pleadings were due (Mar. 2017)"). As discussed above, that order only required Plaintiff to provide proposed amendments *to Defendants*, rather than to file them with the Court. Am. Pretrial Scheduling and Procedures Order, ECF No. 165, at 6. The Court's January 8, 2018, Minute Order expressly provided for the filing of Plaintiff's Motion.

Defendants also argue that Plaintiff unduly delayed seeking to add certain other information that may go beyond the belated production. *See* Defs.' Opp'n at 12. Perhaps Plaintiff did previously discover certain information, through its prior counsel, that it now seeks to reflect in a further amended complaint. With a few possible exceptions, discussed below, Plaintiff is not seeking to "add a new theory of liability," as Defendant suggests. *Id.* (citing *Elkins v. District of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012) (recognizing that undue delay in proposing new theory supported exercise of district court discretion to deny leave to amend)) (internal quotation marks omitted). Rather, Plaintiff argues that the new references, for example, to the Grubb & Ellis Employee Handbook ("Handbook") "describe McNair's duty of loyalty and his obligation to protect Grubb & Ellis's interests." Pl.'s Reply at 6-7. Such additions are consistent with that portion of the breach of fiduciary duty claim against McNair that the Court permitted to survive, namely that "McNair conspired to induce ANSER to transition its arrangement from Grubb & Ellis to Avison Young." *G&E I*, 168 F. Supp. 3d at 165. Plaintiff's use of the Handbook therefore does not seem limited to portions of the fiduciary duty claim that the Court has rejected, specifically

8

"the claim that McNair solicited ANSER to enter into a brokerage agreement with Avison Young," and "the claim regarding McNair directing the Skyline commission." *Id.* And, importantly, whether or not the Handbook was the subject of discovery before it closed in 2015, Defendants were on notice of the Handbook throughout this case because McNair's employment agreement, which was attached to the original [1] Complaint, expressly incorporates the Handbook. *See* Defs.' Opp'n at 12 (claiming no discovery regarding Handbook, which allegedly was not produced until 2017); Compl. Ex. B, ECF No. 1-2, at 7 (referring to Handbook). Because, in the foregoing regards, Plaintiff "does not seek to add any claims in its amendment," but rather "seeks to add . . . factual allegations designed to clarify existing claims," the Court shall not deny Plaintiff the opportunity to add such allegations, even if the underlying factual support for at least some such allegations was previously known to Plaintiff under prior counsel. *Westrick*, 301 F.R.D. at 9.

The one possible exception to the foregoing disclaimer of new theories is Count VII. Plaintiff proposes to add to Count VII that McNair's breach of fiduciary duties included "soliciting to Avison Young certain Grubb & Ellis employees who were working on the ANSER transaction." [Proposed] 2d Am. Compl., ECF No. 217-4, ¶ 149. Among other expansions in Count VII, Plaintiff also articulates a broad alleged "diversion of business" that is not specifically limited to diversion of ANSER's business. *Id.* ¶¶ 150, 151. These allegations were not expressly part of Count VII in the First Amended Complaint. Indeed, now Plaintiff contemplates multiple "breaches." *See id.* ¶ 152 (claiming compensatory damages for "breaches of fiduciary duty"); *id.*, Prayer for Relief (seeking disgorgement "as a result of his *multiple* breaches of fiduciary duty" (emphasis added)). Defendants briefly refer to the solicitation allegation, but only expressly oppose the allegations expanding Count VII beyond the ANSER transaction. *See* Defs.' Opp'n at 2-3, 7. Based on Plaintiff's representation, the Court presumes that discovery already had in this case supports these

theories. Accordingly, in an exercise of the Court's discretion, the Court shall not find that they are a reason to deny leave to amend.

Nor does Plaintiff's attempt to obtain disgorgement appear to come too late. *See id.* at 13-14. Plaintiff now expressly seeks not only compensatory damages for McNair's alleged breaches of fiduciary duty, but also disgorgement of the "substantial sums," "no less than $1,600,000," which McNair allegedly received as a result. [Proposed] 2d Am. Compl., ECF No. 217-4, ¶¶ 152-53. The Court assumes that Plaintiff derives this specific dollar figure from discovery. *See* Pl.'s Mem. at 11 (describing the "simple arithmetic" to produce this figure based on information allegedly from McNair); Pl.'s Reply at 12. Defendants do not contest Plaintiff's assertion that "disgorgement is a component of damages for a breach-of-fiduciary-duty claim." Pl.'s Mem. at 10; *see also* Pl.'s Reply at 10 (citing *United States v. Project on Gov't Oversight*, 839 F. Supp. 2d 330, 349 (D.D.C. 2012), *aff'd*, 766 F.3d 9 (D.C. Cir. 2014) (Mem.) (*POGO Appeal*)). Precedent in this Circuit suggests that disgorgement is in fact the "traditional remedy for a breach of fiduciary duty." *Project on Gov't Oversight*, 839 F. Supp. 2d at 349; *see also id.* at 353-54; *POGO Appeal*, 766 F.3d at 9 (affirming finding of breach resulting in order of disgorgement).

The Court agrees that Plaintiff should not be precluded—at least not upon a motion to amend—from pursuing this traditional remedy for a breach of fiduciary duty claim that has been part of Plaintiff's operative complaint throughout this litigation. In any event, at trial, the Court would be entitled to award disgorgement on this claim. *See* Pl.'s Reply at 11 (citing Fed. R. Civ. P. 54(c) ("Every [nondefault] final judgment should grant the relief to which each party is entitled, *even if the party has not demanded the relief in the pleadings*." (alteration and emphasis in original)). Plaintiff concedes, however, that further discovery by Defendants on this point may be

necessary. Pl.'s Mem. at 11 ("[I]f McNair believes additional discovery on disgorgement is in order, he has the opportunity to conduct such discovery.").

Accordingly, neither the timing of Plaintiff's Motion nor the content of the proposed amendments supports an argument that Plaintiff unduly delayed its efforts to amend the operative complaint.

### B. Prejudice

Setting aside any arguments stemming from the foregoing issues, Defendants essentially argue that they would experience two forms of prejudice from a further amended complaint. The first is attributable to their investment of resources in prior discovery. *See, e.g.*, Defs.' Opp'n at 13-14 (arguing that "years of written discovery and depositions" preceded Plaintiff's attempt to obtain disgorgement remedy). But "an amendment is not automatically deemed prejudicial if it causes the non-movant to expend additional resources," for (virtually) every amendment meets that criterion. *Westrick*, 301 F.R.D. at 9. Coming at this relatively late stage, however, amendments following the close of discovery and resolution of summary judgment motions raise a greater prospect of prejudice. Plaintiff's amendments likely affect trial preparation and may complicate the trial. *See Djourabchi*, 240 F.R.D. at 13 (citing Wright, Miller & Kane, *supra*, § 1487). Nevertheless, the Court does not interpret these amendments as "substantially chang[ing] the theory on which the case has been proceeding," nor are the issues "remote from the other issues in the case." *Id.* (quoting Wright, Miller & Kane, *supra*, § 1487) (internal quotation marks omitted). In addition, the amendments should be based on discovery already provided in this case, including the belatedly produced McNair Emails. The Court previously found that those emails are likely to necessitate additional discovery by Defendants. *See G&E II*, 323 F.R.D. at 71; Min. Order of Jan. 8, 2018 (documenting "the Court's understanding that its decision regarding the

Second Amended Complaint may affect the scope and timeline of reopened discovery"). Accordingly, the fact that Defendants have sunk resources into prior discovery is not sufficient to preclude amendment now.

Defendants also argue that the type of Second Amended Complaint that Plaintiff proposes would prejudice them by "reassert[ing] the seven claims that were previously dismissed on summary judgment." Defs.' Opp'n at 11-12. In a footnote to its proposed pleading, Plaintiff explains that:

> The summary of the claims set forth in this Second Amended Complaint reflects the Court's prior decision on summary judgment. *Certain of the previously dismissed counts are still present in the Second Amended Complaint to preserve Plaintiff's appellate rights.* At trial, Plaintiff will limit its evidence to Counts IV, V and VII.

[Proposed] 2d Am. Compl., ECF No. 217-4, at 1 n.1 (emphasis added). The Court rejects this manner of proceeding, for which Plaintiff cites no authority. Keeping an eye towards appellate proceedings does not justify keeping previously denied claims in a new version of the operative complaint. Upon appeal, Plaintiff would have the entirety of the record on which to proceed. In the meantime, it is confusing for the Court and Defendants, even if not prejudicial per se to Defendants, to introduce a new form of complaint that retains claims no longer at issue, with or without a clarifying footnote.

Although the Court ultimately shall find that leave to amend is warranted, the Court shall instruct Plaintiff to file a new version of the Second Amended Complaint that excludes Counts I-III, VI, and VIII-X, as to which this Court previously granted summary judgment against Plaintiff. The Court also shall require Plaintiff to excise those theories in Count VII upon which the Court previously granted summary judgment against Plaintiff, namely that McNair breached his fiduciary duties "by soliciting Grubb & Ellis's client, ANSER, to enter a brokerage agreement with

12

Avison Young, [and] by directing the commission earned in connection with the lease of the Skyline Property to Avison Young instead of Grubb & Ellis." *Id.* ¶ 149; *see also G&E I*, 168 F. Supp. 3d at 165.

### C. Bad faith

To the extent that Defendants implicitly argue that Plaintiff moves in bad faith, most of that argument overlaps with grounds that the Court already has addressed in some fashion above, such as a purported attempt to "relitigate issues" in various respects or "amend its entire case." Defs.' Opp'n at 9-11. The Court declined to issue sanctions in connection with the belated production of McNair Emails, and so it shall not consider that timing to be an issue of bad faith for purposes of this decision. *See id.* at 10; *G&E II*, 323 F.R.D. at 71.

Defendants also point to prior iterations of Plaintiff's proposed Second Amended Complaint—whether those were simply shared with Defendants or filed with the Court—in support of their argument that Plaintiff is only "becom[ing] more brazen in [its] attempts to ignore the Court's previous rulings and stated rationale." *See* Defs.' Opp'n at 6-7. Those versions have not been adopted, however, and are therefore irrelevant to this decision.

This is not a case in which Plaintiff, "sensing the end is near, [is] attempting to resuscitate previously-rejected claims, in order to breathe life into [a] withering lawsuit." *Hoffmann v. United States*, 266 F. Supp. 2d 27, 34-35 (D.D.C. 2003), *aff'd per curiam*, 96 F. App'x 717 (Fed. Cir. May 4, 2004). The remaining claims in this case are proceeding to trial. Plaintiff's proposed amendment reflects an attempt to conform the operative complaint to the state of the evidence and prior proceedings in order to prepare those claims for trial. *Cf.* Fed. R. Civ. P. 15(b)(2). The Court observes no bad faith in Plaintiff's proposed amendment.

### D. Prior Amendment

Before transferring this case to this district, Judge Claude M. Hilton of the United States District Court for the Eastern District of Virginia permitted Plaintiff to file an amended complaint in response to the dismissal of Count X. Order, ECF No. 25. Plaintiff did so. 1st Am. Compl., ECF No. 31. But that count is no longer at issue in this case. Accordingly, the fact that Plaintiff previously amended does not affect the Court's decision now whether to permit the Second Amended Complaint.

***

Each of the *Foman* factors supports a decision to permit Plaintiff to amend its complaint, subject to the requirement that this amendment omit claims no longer at issue. The impending reopening of discovery may also be affected by the content of the Second Amended Complaint.

### IV. CONCLUSION

For the foregoing reasons, in an exercise of its discretion, the Court shall **GRANT-IN-PART and DENY-IN-PART** Plaintiff's [217] Motion for Leave to File Second Amended Complaint.

By **OCTOBER 5, 2018**, Plaintiff may file a version of its Second Amended Complaint that omits Counts I-III, VI, and VIII-X, as to which this Court previously granted summary judgment against Plaintiff. That version also shall excise those theories in Count VII upon which the Court previously granted summary judgment against Plaintiff, namely that McNair breached his fiduciary duties "by soliciting Grubb & Ellis's client, ANSER, to enter a brokerage agreement with Avison Young, [and] by directing the commission earned in connection with the lease of the Skyline Property to Avison Young instead of Grubb & Ellis." [Proposed] 2d Am. Compl., ECF No. [217-4], ¶ 149.

14

By **OCTOBER 12, 2018**, Defendant shall file a Notice identifying, with specificity, the discovery necessitated by the McNair Emails discussed in the Court's [215] Memorandum Opinion and Order of October 18, 2017; indicating, with specificity, whether any aspect of the Court's decision today separately warrants further discovery; and proposing a timetable for all such discovery. Based on the Court's foregoing assessment of the Second Amended Complaint, and the assumptions discussed in that assessment, Plaintiff shall not be permitted further discovery at this pretrial stage in the proceedings.

**SO ORDERED.**

Dated: September 28, 2018

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge