**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| G&E REAL ESTATE, INC.,<br><br>         Plaintiff,<br><br>    v.<br><br>BRUCE   B.   MCNAIR   and   DAVID<br>ROEHRENBECK,<br><br>         Defendants. | Civil Action No. 14-0418 (CKK) |

**MEMORANDUM OPINION**
(December 1, 2022)

Pending before the Court are Defendants Bruce B. McNair ("McNair") and David

Roehrenbeck's ("Roehrenbeck" and, collectively, "Defendants") [247] Motion for Summary

Judgment.  On February 27, 2020, the Court entered an order holding this motion in abeyance

pending supplemental briefing.  Although the Court suggested at that time that only a portion of

this case was susceptible of summary judgment, upon further review of the relevant portions of

the record, the Court concludes that the three remaining counts of Plaintiff's complaint fail as a

matter of law.  Therefore, and upon consideration of the briefing,[1] relevant legal authorities, and

the relevant record, [247] Motion for Summary Judgment is **GRANTED**.

---

[1]  This Memorandum Opinion has focused on the following documents:
- Second Amended Complaint, ECF No. 230 ("Second Am. Compl.");
- Motion for Summary Judgment, ECF No. 247 ("Mot. for Summ. J.");
- Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, ECF No. 250 (Pl.'s Resp.");
- Plaintiff's Response to Defendants' Statement of Material Facts not in Dispute and Statement of Additional Material Facts in Genuine Dispute, ECF No. 250-1 ("SMF");
- Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ECF No. 252 ("Def.'s Reply");
- Assignment of Claim, ECF No. 250-32 ("Assignment"); and
- Plaintiff's Surreply, ECF No. 260 ("Surreply").

The Court concludes that oral argument would not be of assistance in disposing of this matter.

# I.     BACKGROUND

The Court previously summarized the background to this case in its earlier resolution of motions for summary judgment, *see G&E Real Estate, Inc. v. Avison Young–Washington, D.C., LLC*, 168 F. Supp. 3d 147, 151–52 (D.D.C. 2016) ("*G&E I*"), ECF No. 138, and a motion to amend the complaint, *see G&E Real Estate, Inc. v. Avison Young–Washington, D.C.*, LLC, 2018 WL 4680199, at *1–*2 (D.D.C. Sept. 28, 2018) ("*G&E II*"), ECF No. 221.  The Court restates only the background necessary to resolve the present motion.  For further background, the Court refers the reader to *G&E I* and *G&E II*.

## A.  Procedural Background

On October 15, 2013, G&E Real Estate, Inc, doing business as Newmark ("Plaintiff") filed a complaint against Defendants Avison Young – Washington D.C. LLC ("Avison Young"), Analytic Services, Inc ("ANSER"), Bruce B. McNair ("McNair"), Joseph F Peyton ("Peyton"), and David Roehrenbeck ("Roehrenbeck") in the United States District Court for the Eastern District of Virginia. *G&E I* at 151.  Plaintiff's initial complaint contained ten counts against the various defendants arising out of Avison Young's allegedly improper decision to enter into a Tenant Representation Agreement ("TRA") with ANSER. *Id.* at 14-22. After various procedural maneuverings, Plaintiff filed its first amended complaint on December 23, 2013. First Am. Compl., ECF No. 31 at 26. The case was subsequently transferred to this Court on March 14, 2014. Order, ECF No. 72 at 3.

Following transfer, and after discovery, all defendants moved for summary judgment. ANSER Mot. for Summ J., ECF No. 125; Avison Young Mot. for Summ. J., ECF No. 127. The Court granted summary judgment on most of the claims in the case, leaving Plaintiff with three remaining claims: a breach of contract claim against McNair, a breach of fiduciary duty claim

2

against McNair, and a breach of contract claim against Roehrenbeck. *See G&E I*, 168 F. Supp. 3d at 168–69. The Court subsequently permitted Plaintiff to amend its complaint, resulting in the Second Amended Complaint, ECF No. 230. *See G&E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC,* Civil Action No. 14-418, 2018 WL 4680199 at *7 (D.D.C. 2018).

Then, at the status hearing held on May 17, 2019, Defendants requested leave to file a second summary judgment motion based on allegations in the Second Amended Complaint. *See* May 17, 2019 Status Hearing Tr., ECF No. 248, at 3:24–7:6. The Court granted Defendants leave to file over Plaintiff's objection and set a briefing schedule. *See id.* at 7:24–8:5; May 20, 2019 Scheduling and Procedures Order, ECF No. 244. Defendants have since filed the instant Motion for Summary Judgment, ECF No. 247, which Plaintiff opposes. The Court also granted Plaintiff the right to file a surreply addressing a contractual issue raised for the first time in Avison Young's response to Plaintiff's opposition to the second motion for summary judgment. *See G&E Real Estate, Inc. v. Avison Young*, Civil Action No. 14-418, 2020 WL 956469 at *4 (D.D.C. 2020). Plaintiff promptly filed its surreply. Plaintiff's Surreply, ECF No. 260.

### B. Factual Background

Before proceeding to the factual background in earnest, the Court notes that the following is either undisputed and/or unrebutted unless otherwise stated. At times, for the purposes of resolving the motion, the Court takes certain portions of the operative complaint as true, explaining later that Plaintiff's claims fail as a matter of law even doing so. Given the multitude of individuals and organizations relevant to this litigation, the Court will first briefly introduce them. Plaintiff is a Delaware corporation with its principal place of business in New York and operates a real-estate brokerage company in the Commonwealth of Virginia. SMF at 3. Defendant McNair is a former employee of Plaintiff's corporate forbear, Grubb & Ellis ("G&E") and is currently an employee of

Avison Young, a competing real estate brokerage. *Id.* at 3-4. Defendant Roehrenbeck is also a former employee of Plaintiff's corporate forbear and works with McNair at Avison Young. *Id.* at 4. G&E was a national real estate brokerage service which filed for Chapter 11 bankruptcy on February 20, 2012. *Id.* at 22. Finally, BGC Partners, Inc ("BGC") is a New York-based company, which purchased certain assets of G&E during bankruptcy. *G&E I* at 151.

On June 16, 2006, McNair entered into an employment contract to serve as an Executive Vice President at G&E. SMF at 3. Among other things, the contract set certain conditions for McNair's termination, including a particularly salient "adequate justification" clause, which permitted McNair to voluntarily terminate the contract without being subject to various noncompete, confidential information, and trade secret provisions. ECF No. 222-2 at 6-8. Furthermore, the contract suggests that McNair and his team were expected to work out of G&E's Washington, DC office. *Id.* at 5. Roehrenbeck entered into an employment agreement with G&E on April 2, 2009 which contained a similar trade secrets and confidentiality provision. Second Am. ECF No. 1-3 at 1. On September 1, 2011, McNair and G&E renewed the contract for five years. *See id.* at 10. The 2011 contract extension confirmed that Roehrenbeck was a member of McNair's team. Ex. B. at 24.[2]

In their capacity as employees of G&E, McNair and his team provided brokerage services to ANSER, a federal contractor in the fields of national security, homeland security, and public safety. *See G&E I* at 151. ANSER had entered into a Tenant Representation Agreement ("TRA") with G&E which recognized G&E as ANSER's exclusive real estate representative. Second Am. Compl. ¶ 59. Plaintiff alleges that, during that time, McNair collaborated with staff at Avison

---

[2] Plaintiff contests that Roehrenbeck was a member of McNair's team before that date. SMF at 4. For present purposes, that dispute is immaterial.

Young to divert the ANSER business to Avison Young, in violation of McNair's contractual obligations to G&E.  Second Am. Compl. ¶ 2. This collaboration included both McNair and Roehrenbeck allegedly misappropriating G&E's confidential information to facilitate the transition of the ANSER business from G&E to Avison Young. *Id.* ¶ 4.

In January 2012, G&E did not pay McNair a bonus which McNair argues was contractually obligated.  SMF at 15.  On that basis, McNair invoked the "adequate justification" clause  and voluntarily terminated his employment contract with G&E. Ex. 15 (sealed);  Second Am. Compl. ¶ 29.  Roehrenbeck, as a member of McNair's team, followed him to Avison Young, allegedly also taking with him confidential G&E information and trade secrets. *Id.* ¶¶ 29, 36.

After G&E filed for bankruptcy on February 20, it failed to assume the TRA with ANSER, thus waiving any rights it or its bankruptcy estate had to enforce the contract.  *G&E I*, 168 F. Supp. 3d at 162.  Subsequently, on April 11, 2012, ANSER entered into a  tenant-representation agreement with Avison Young.  Second Am. Compl. ¶ 96. Then, on June 11, 2012, ANSER entered into a lease for a property and paid Avison Young a commission of $1,224,387.01 for its services locating the property and closing the deal.  *Id.* ¶ 97.  Plaintiff maintains that it is legally due this Commission.

On or about April 5, 2012, BGC purchased "substantially all" of G&E's bankruptcy estate. *Id.* ¶ 54.  BGC then executed an assignment of claims ("Assignment of Claim" or "Assignment") with Plaintiff upon which Plaintiff now bases its standing to bring the present action.  *Id.* ¶ 1. Plaintiff seeks damages no less than $600,00 for the commission wrongfully paid to Avison Young in connection with the June ANSER lease, and disgorgement of sums wrongfully paid to McNair as a result of his multiple breaches of fiduciary duty in an amount no less than $1,600,000.  *Id.* ¶

¶123-24.  In sum, three theories of liability remain:  (1) breach of contract against McNair, (2) breach of contract against Roehrenbeck, and (3) breach of fiduciary duty against McNair.

## II.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact.  *Id.*  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (A) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (B) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.  *See Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009).  Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

## III.    DISCUSSION

The pending Motion raises three substantial issues for resolution. *First*, as a threshold matter, the Court must determine whether Plaintiff has standing to bring its claims, i.e., whether it is in privity with pre-bankruptcy G&A. Plaintiff bases its standing on a contract executed between Plaintiff and BGC, the "Assignment of Claims" discussed above. Second Am. Compl. ¶ 1. In response to this Court's ruling in *G&E I* that Plaintiff and BGC have no rights under the TRA as discussed in the Assignment of Claims, Plaintiff finds a right to the Commission elsewhere in the Assignment to Claims. In short, the Court agrees that the Assignment of Claims conveys a right to recover the Commission under a breach-of-contract theory, but it does not permit recovery on a claim of breach of fiduciary duty. Because G&E's breach-of-contract claim accrued before

7

bankruptcy, the G&E bankruptcy estate "owned" the claim when BGC purchased the G&E bankruptcy estate.  However, any claim of breach of fiduciary duty accrued after G&E filed its bankruptcy petition.  As such, BGC could not purchase a claim of breach of fiduciary duty from the G&E bankruptcy estate, so BGC could not assign that claim to Plaintiff (or any other entity).

*Second*, although Plaintiff has standing to recover the Commission on its  Plaintiff's breach-of-contract theory, such a theory fails as a matter of law.  Construing all material facts in the light most favorable to Plaintiff, Plaintiff nevertheless cannot show that any breach on the part of Defendants proximately caused G&E to lose the Commission due under the terminated TRA.

*Finally*, fearing the Court might conclude that Plaintiff lacks standing as to its breach-of-contract theory as well, Plaintiff in its surreply asks in the alternative for leave to file, in effect, a third amended complaint.   Surreply at 10.  Because judicial economy would not be served by a fourth bite at the apple after over eight years of litigation, the Court denies leave to amend and enters judgment in favor of Defendants.

**A.  Standing and Breach-of-Contract Claims**

    1.    <u>BGC Purchase Agreement – Breach of Contract Claim Assumption</u>

Defendants first argue that Plaintiff lacks standing to recover on its breach-of-contract claim against McNair and Roehrenbeck because G&E failed to assume their employment contracts upon filing for bankruptcy.  Mot. for Summ. J. at 9.  This argument misunderstands Plaintiff's position.  Plaintiff seeks damages for breach of contract and relies upon an assignment conferring all rights to such damages arising under that claim.  Pl.'s Resp. at 32-33.  The question is not whether G&E properly assumed the employment contracts upon filing for bankruptcy, but rather whether G&E could have had such rights at the time of assignment.  As discussed next, the answer depends on when the claim accrued.

2.    BGC Purchase Agreement – Breach of Contract Claim Accrual

The Court begins with the axiomatic principle that the G&E bankruptcy estate, which sold all right to the Commission to BGC, could only assign that which it owned.  A bankruptcy estate includes only "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 USCA § 541(a)(1).  As such, only legal claims which accrued prior to the filing of the bankruptcy petition are owned by the bankruptcy estate.  *In re Blasingame*, 986 F.3d 633, 638-39 (6th Cir. 2021); *see also In re Glaser*, 816 F. App'x 103, 104 (9th Cir. 2020).  To determine whether BGC purchased the breach of contract claims when it purchased substantially all of BGC's bankruptcy estate, the Court must adjudge whether the breach of contract claims accrued prior to G&E's filing for bankruptcy.

Federal courts defer to state law to determine when a claim accrues for purposes of inclusion in a bankruptcy estate.  *In re Witko*, 374 F.3d 1040, 1043 (11th Cir. 2004).[3]  Choice of law begins first by looking to the choice-of-law rules of the forum state.[4]  *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014).  Because the Assignment of Claim includes no choice-of-law provision, the Court must identify the jurisdiction with the most significant relationship to the dispute by using the four factors enumerated in the Restatement (Second) of Conflict of Law § 145.  *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006).  These factors are: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship is centered.  *Id.*

---

[3]  *Accord In re Glaser*, 816 F. App'x 103, 104 (9th Cir. 2020); *In re Underhill*, 579 F. App'x 480, 482 (6th Cir. 2014).

[4]  The parties do not contest choice-of-law in their briefing, perhaps because they view the issue as non-dispositive.  Regardless, the Court engages with this issue here, if only briefly.

9

First, because G&E was located in the District of Columbia, and the injury was to G&E's pecuniary interest, the injury occurred in the District of Columbia.  Second, it would appear that the conduct causing the injury occurred in both Virginia and the District of Columbia insofar as Defendants worked out of a District of Columbia office for a deal on real estate in Virginia.  Third, the relationships between the parties reside predominantly within the District of Columbia—G&E had an office located in D.C., McNair was a resident of Maryland, Roehrenbeck was a resident of D.C., and Defendants were based in the District of Columbia.   Second Am. Compl. ¶¶ 9, 10, 67, 69, 83, 97, Ex. B. at 4 (Roehrenbeck contract).  Therefore, the parties' relationship appears to have been centered in the District of Columbia.  As such, the jurisdiction with the most significant relationship to the claims at issue is the District of Columbia, and D.C. law applies.

Under District of Columbia law, a breach-of-contract claim accrues at the time of the breach, even if no injury has occurred.  *See, e.g.*, *Wright v. Howard Univ.*, 60 A.3d 749, 753 (D.C. 2013); *Bedell v. Inver Hous., Inc.*, 506 A.2d 202, 205 (D.C. 1986).  A breach occurs when the party fails to perform when performance is due.  *Eastbanc, Inc. v. Georgetown Park Assocs. II*, 940 A.2d 996, 1004 (D.C. 2008) (Fisher, J.) (citing 9 Arthur L. Corbin, Corbin on Contracts § 943 (interim ed. 2002)).  In the instant case, McNair's employment agreement imposed upon him a fiduciary in favor of G&E and to contribute all rights to all real-estate brokerage and services opportunities, commissions, and fees to G&E, among other duties.  ECF No. 1-2 at 15 (McNair contract).  Similarly, Roehrenbeck's contract prohibited him from using G&E's confidential information, including work product, client information, and trade secrets for any purpose other than in connection with G&E's business.  ECF No. 1-3 at 1 (Roehrenbeck contract).  McNair and Roehrenbeck's contracts also required their compliance with G&E's Employee Handbook, which stated in part that employees were not to engage in any conduct that would create an actual or

potential conflict of interest with the best interests of G&E. *See id.*; Second Am. Compl. ¶¶ 46, 47.

However, Plaintiff alleges that McNair breached his contract when he failed to perform these duties by working to divert the ANSER transaction to Avison Young as early as April 2011. Second Am. Compl. ¶ 2. Subsequently, Plaintiff alleges Roehrenbeck breached his contract on February 10, 2012 when he allegedly stole confidential information related to the ANSER client. Second Am. Compl. ¶ 36. Therefore, taking these allegations as true, Plaintiff's claims against Defendants accrued before G&E filed a bankruptcy petition on February 20, 2012. As such, both claims were a part of G&E's bankruptcy estate, and BGC lawfully purchased them through the Asset Purchase Agreement.

### 3.    Extent of Assignment under Assignment of Claim Agreement

Defendants next argue that Plaintiff cannot bring its claims because BGC only assigned to Plaintiff the right to pursue claims arising from the TRA, not any of BGC's claims to the Commission. Mot. for Summ J. at 2. Defendants emphasize the Court's previous ruling in *G&E I*. *Id.* There, the Court first noted that contracts which are executory at the time a party files for bankruptcy may be assumed, assigned, or rejected by the party. *G&E I*, 168 F. Supp. 3d at 154. *G&E I* concluded that the TRA remained executory at the time G&E filed for bankruptcy because it had not been breached. *Id.* at 158. Therefore G&E had no rights under it because it failed to assign or assume it. *Id.* at 158. Plaintiff counters that it now bases its claims not upon any rights under the TRA, but instead on its assigned right to the Commission. Pl.'s Resp. at 22-23. Plaintiff has the better of the argument.

Because New York law governs the Assignment of Claim,[5] the Court begins, as New York law provides, with the text.  *Slatt v. Slatt*, 477 N.E.2d 1099, 1099 (N.Y. 1985).  The Assignment of Claim provides, in two separate recitals:

> C. Among the G&E tangible intangible assets purchased by G&E was all of G&E's right, title and claim to, interest in, and entitlement to receive the payment of, the real estate commission earned in connection with the lease…to Analytic Services ("Tenant") of office space located in the Skyline Technology Center in Falls Church, Virginia (the "Commission"), pursuant to the Written Exclusive Tenant Representation Agreement dated September 23, 2011, entered into by and between Tenant and G&E (the "Agreement")."

> D. By their execution of this Assignment, BGC intends to assign to its wholly owned-subsidiary, NGKF, all of G&E's right, title and claim to, interest in, and entitlement to the Commission, and all of G&E's right, title and claim to, and interest in, the Agreement (jointly, the "Assigned Matter"), and NGKF intends to accept the assignment thereof from BGC.

Assignment of Claim, ECF No. 125-8, ¶¶ C-D.  The Assignment also contains the following operative language: "BGC hereby assigns to NGKF all rights, interests, claims, demands, causes of action, and choses in action asserted in or related to the Assigned Matter."  *Id.* ¶ 1.

Under New York law, agreements are construed in accord with the parties' intent by analyzing the plain meaning of the provisions of the contract. *See, e.g.*, *Slatt*, 447 N.E.2d at 1099. Additionally, New York law distinguishes between recitals and operative language, and emphasizes that recitals may be disregarded where they conflict with the operative clauses. *Kaloyeros v. Rsch. Found. of State Univ. of New York,* 71 Misc. 3d 129(A), 2021 WL 1899401, at *11 (N.Y. Sup. Ct. 2021); (quoting *Musman v Modern Deb*, 56 A.D.2d 752, 753 (N.Y. App. Div. 1972)); *Rubinstein Bros. v. Ole of 34th St., Inc.*, 101 Misc. 2d 563, 567 (N.Y. Civ. Ct. 1979).

---

[5] BGC and Plaintiff are based in New York and the Assignment of Claim contract between them contains a New York choice-of-law provision.  Surreply at 4; Assignment ¶ 6. The contract's choice of law provision governs because there is a reasonable relationship between the parties and the chosen state. *Robert Half Int'l Inc. v. Billingham*, 315 F. Supp. 3d 419, 427 (D.D.C. 2018).

Here, contract, by its plain meaning, assigned to Plaintiff the right to pursue claims against Defendants flowing from two separate sources, the Commission and the TRA.  Assignment ¶ D. The "Assigned Matter" is referred to by reference to the Commission and the TRA "jointly."  *Id.* In other words, the Assignment of Claim conveys "all of G&E's right . . . to the Commission" *and* "all of G&E's right . . . in[] in the [TRA]."  Together, these are the "Assigned Matter" and, separately, these are (1) the Commission and (2) the TRA.   Inability to recover under the TRA does not vitiate the remainder of the "Assigned Matter," the Commission.

### B.  Standing and Fiduciary-Duty Claim

Defendants also argue Plaintiff's breach of fiduciary duty claim did not accrue until post-petition.  Defs.' Reply at 5.  Under D.C. law, "an agent owes her principal a fiduciary duty and a duty of loyalty."  *Gov't of Rwanda v. Rwanda Working Grp.*, 227 F. Supp. 2d 45, 63-64 (D.D.C. 2002).  An agent-principal relationship is established where the principal indicates that the agent will act on its behalf and subject to its control, and the agent consents to acting in such a manner. *Rose v. Silver*, 394 A.2d 1368, 1371 (D.C. 1978); Restatement (Second) Agency § 1 (Am. L. Inst. 1958).  Relevant to this case, a claim for breach of fiduciary duty does not accrue until "injury accrues to the beneficiary or the fiduciary profits thereby."  *Randolph v. ING Life Ins. and Annuity Co.*, 973 A.2d 702, 709 (D.C. 2009) (quoting *Beckman v. Farmer*, 579 A.2d 618, 651 (D.C. 1990) (internal quotations omitted)).  Insofar as Plaintiff grounds a right to the Commission in its breach of fiduciary duty claim, that claim fails.  Assuming, without deciding, that McNair's employment relationship with G&E imposed a fiduciary duty upon him, it is uncontested McNair did not successfully divert the business to Avison Young, or receive the Commission, until June 2012, months after G&E filed for bankruptcy.  SMF at 58.  As such, G&E's claim did not accrue until

post-petition, as such, the Assignment of Claim could not transfer any such right to Plaintiff. Plaintiff's fiduciary-duty claim therefore fails as a matter of law.

### C. Merits of Breach of Contract Claim

#### 1. Adequate Justification Defense

Defendants next argue that no reasonable jury could find for Plaintiff because they were entitled to rely on the "Adequate Justification" provision of McNair's contract. The employment contract is governed by D.C. law, *supra* at 9-10 (choice of law analysis), so the Court "examines[s] the document on its face, giving the language its plain meaning." *Tillery v. D.C. Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006). These "Adequate Justification" provisions of McNair's contract specify circumstances in which McNair was entitled to terminate his employment contract with G&E. Ex. B. at 29. In those circumstances, the McNair Team, which included Roehrenbeck, is exempt from various provisions of the employment agreement and G&E's Employee Handbook. Ex. B. at 6-7. As relevant here, McNair could terminate the employment agreement with Adequate Justification in the event of "any failure by [G&E] to pay any compensation to [McNair] when due in accordance with the terms of the Employment Agreement and [G&E's] policies." Ex. B. at 29.

Defendants argue that G&E's failure to pay McNair a contractually required retention bonus in January 2012 was such "Adequate Justification." First Mot. for Summ J. at 10. McNair subsequently demanded payment and later terminated his relationship with G&E. *See* SMF at 15-16. The plain meaning of compensation includes bonuses. *Compensation*, Black's Law Dictionary (11th ed. 2019). Therefore, under the plain meaning of McNair's employment contract, he was entitled to terminate his employment agreement with G&E with Adequate Justification.

Plaintiff counters that McNair's previous material breach of the employment contract prohibits him from relying on the Adequate Justification provision of the contract. Pl.'s Resp. at

36.  Plaintiff's argument is unavailing.  In *Ashcraft & Gerel v. Coady*, the United States Court of Appeals for the District of Columbia Circuit considered the inverse of the instant case.  244 F.3d 948, 949 (D.C. Cir. 2001) (applying D.C. law).  There, a law firm sued one of its employees for breach of contract, breach of fiduciary duty, and conversion.  *Id.*  The employee countered that the law firm breached the contract first by failing to pay him a semiannual salary bonus.  *Id.*  The court rejected the argument, noting "material breach entitles the injured party to an election of remedies, including rescission or termination of the contract, not a license to commit torts or otherwise breach the contract."  *Id.* at 951.  The court emphasized "[b]ecause [the employee] remained at the firm, he could not ignore his obligations for performance under the employment contract, even if he was ignorant of the firm's breach."  *Id.*  Similar to the employee's continuing contractual obligation in *Coady*, here, G&E continued to employ McNair, so it could not ignore its obligation to pay him a retention bonus.  Upon failure to pay the bonus, McNair had the right, under the contract, to terminate his employment agreement with Adequate Justification.

Plaintiff next argues McNair was required to provide G&E 60 days to cure the failure to pay compensation before terminating the agreement with adequate justification.  Pl.'s Resp. at 39.  This argument is also unavailing.  The Adequate Justification provision plainly contains 6 independent "events" that would permit McNair to terminate with Adequate Justification. Ex. B. at 29.  While the second event, which is breach of contract broadly, requires a 60-day cure period, McNair relied upon the fifth event, which does not contain any language requiring a 60-day cure period. *Id.*; Ex. 18.

However, Plaintiff does successfully argue that even if the Adequate Justification provisions apply, they do not entirely absolve Defendants of liability.  The Adequate Justification provisions apply to the McNair Team, which includes Roehrenbeck. Ex. B. at 24.  The provisions

15

provide a number of rights to the McNair Team.  First, they provide an exemption from the standard G&E noncompete clause.  Ex. B. at 6-7.  Second, they provide an exemption from the trade secrets and work product provisions of the standard G&E employment agreement and manual as they would apply to the McNair Team's "Current and Former Clients" and future clients that did not arise from company leads or resources. Ex. B. at 6-7, 16-17.

However, the provisions do not exempt the McNair Team from the trade secret and work product provisions as they relate to ANSER, because ANSER was not a "Current and Former Client" of the McNair team, and the ANSER business was generated through G&E efforts outside of the McNair team.  Ex. B. 22-23; Second. Am. Compl. ¶¶ 55-59.  Furthermore, the employment contract contains no provisions shielding the McNair Team from liability for actions taken in breach of their contracts during their employment at G&E. *See* Ex. B.  As such, any efforts to "steal" ANSER business from G&E prior to McNair's termination in January 2012 are actionable on Plaintiff's breach-of-contract theory.

Plaintiff finishes its adequate justification arguments with a laundry list of grievances against McNair that have no relation to the Commission, and therefore it has no standing to pursue. This includes Plaintiff's claim that the Adequate Justification provision does not apply to confidential Grubb & Ellis business and financial documents unrelated to the ANSER Commission, and its argument that the Adequate Justification provision does not apply to McNair's solicitation of G&E's employees.  Pl.'s Resp. at 42-43.  As explained above, the Assignment of Claim conveys the right to recover the Commission, and not a claim for any and all ensuing damages.

16

2. Proximate Causation

Defendants also argue G&E's material breach of the TRA is an intervening cause that prevents Plaintiff from establishing proximate causation.  Mot. for Summ. J. at 4-5.  Besides nominal damages, a plaintiff may recover through a breach of contract claim only those damages for which they can establish the breach of contract was the proximate cause.  *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 736-37 (D.C. 2000); *Bedell v. Inver Hous., Inc.*, 506 A.2d 202, 205 (D.C. 1986).  Proximate cause "is that cause which, in actual continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred." *Dutcher v. U.S.*, 736 F. Supp. 1142, 1146 (D.D.C. 1990) (citing *Wagshal v. District of Columbia*, 216 A.2d 172, 175 (D.C. 1966)).  In the instant case, Plaintiff has failed to squarely address the issue of proximate causation.

The sequence of events in this case is crucial to understanding the causal chain. Construing the facts in the light most favorable to Plaintiff, Defendants' efforts to steal the ANSER busines in breach of their employment contracts began well before G&E filed for bankruptcy.  Second. Am. Compl. ¶ 2.  Defendants then terminated their employment with G&E with Adequate Justification and began working for Avison Young on February 13, 2012. *Id.* at 87.  To the extent Defendants' breach of their employment contract caused the loss of the Commission, they are entitled to the Commission as their measure of damages.  However, on February 20, 2012, G&E filed for bankruptcy. *Id.* ¶ 51.  Perhaps accidentally, it failed to assume the TRA, thereby materially breaching it.  *G&E I*, 168 F. Supp. 3d. at 158.  After G&E breached the TRA, ANSER paid Defendants, as employees at Avison Young, a Commission for their services in June 2012.

G&E's breach of the TRA serves as an "efficient intervening cause" sufficient to defeat a finding of proximate causation between Defendants' breach of contracts and the diversion of the

ANSER commission. *See Dutcher*, 736 F. Supp. at 1146 (D.D.C. 1990). In this regard, *FCE Benefit Adm'rs, Inc. v. George Washington Univ.* is instructive. 209 F. Supp. 2d 232, 234 (D.D.C. 2002). There, an insurer, FCE, sued an insurance agent for breach of contract. *Id.* at 234. The contract barred the agent from diverting business to any of FCE's competitors. *Id.* at 241. At the same time, another defendant, an employer on the market for insurance to provide employees, entered into an agreement to use FCE as its insurance provider. *Id.* at 235. However, the employer grew frustrated with the services offered by FCE and worked with the insurance agent to find a different plan. *Id.* at 236-37. The agent working with the employer to find a new insurer breached the agent's contract with the insurer. *Id.* at 234. However, it was the employer switching to the different insurer, and not whatever assistance the agent provided, that was the direct and intervening cause of all of the insurance company's losses. *Id.* at 243. As a result, although the agent was liable for breach of contract, the employer *qua* intervening cause limited the company's pecuniary recovery from the agent to no more than nominal damages. *Id.* at 243.

The circumstances here are quite similar to those in *FCE*. McNair and Roehrenbeck may have been instrumental in diverting the ANSER deal to Avison Young, but G&E's breach of the TRA was the true nail in the coffin. Without G&E's breach of the TRA, G&E might have still had the right to the Commission. But G&E forfeited its rights through breach. On this issue, Plaintiff simply fails to engage. As such, the Court concludes that although Defendants' breach may have caused some injury, G&E's subsequent conduct served as an intervening cause which sealed that loss. Because Defendants' breach did not proximately cause G&E's loss of the Commission, the Assignment of Claims affords Plaintiff no ability to recover the Commission on its breach-of-contract theory. The Court notes that while Plaintiff might be entitled to an award of nominal damages if it can prove the breach of contract claim, it lacks standing to do so given that the

Assignment of Claim only provides it standing for the Commission. That Plaintiff cannot reasonably establish that Defendants' breach of contract proximately caused the loss of the Commission is fatal to its standing to bring the breach of contract claim in its entirety. Counts I and II of Plaintiff's Second Amended Complaint therefore fail as a matter of law.

### D.  Leave to File Supplemental Pleading

In the alternative, Plaintiff requests leave to file a supplemental pleading addressing a new assignment of claims executed between BGC and Plaintiff. Surreply at 15. Because the Court concluded that Counts I and II fail as a matter of law, a supplemental pleading would be relevant only to Plaintiff's fiduciary-duty theory.

Under Federal Rule of Civil Procedure 15(d), "…the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." A motion to file a supplemental pleading should be "freely granted" when it "will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action." *Hall v. C.I.A.* 437 F.3d 94, 101 (D.C. Cir 2006) (quotations omitted). "When evaluating whether to grant leave to amend, the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint." *G&E II* at *2 (cleaned up). The closer a case is to resolution, and the longer it has been pending, the greater the prejudice to the opposing party. *See, e.g.*, *Hoffmann v. United States*, 266 F. Supp. 2d 27, 34 (D.D.C. 2003) *aff'd* 96 Fed. Appx. 717 (Fed. Cir 2004).

The Court need not reach the question of futility because all other factors weigh against permitting a supplemental pleading. As the Court explained in *G&E II*, the Court granted leave to file the operative Second Amended Complaint in part because Plaintiff had recently retained new

counsel who, during late 2016 and 2017, discovered new evidence and documents materially changing the merits of this case.  *Id.* at *3.  Now, Plaintiff seeks to add yet another document available to it in 2017.  It seems quite likely that Plaintiff could have added this document to its operative Second Amended Complaint but did not do so.  Moreover, Plaintiff procrastinated until the moment of surreply, resulting in even further undue delay.  *See Hudson v. Am. Fed. of Gov. Emps.*, Civ. A. No. 17-1867 (JEB), 2019 WL 3533602, at *3 (D.D.C. Aug. 2, 2019).  That standing issues were only more seriously raised during this latest round of briefing does not make Plaintiff's delay any more dilatory, for it is always Plaintiff's burden to establish standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To afford Plaintiff a *fourth* bite at the apple would extend litigation that has already lasted nearly nine years.  *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987) (affirming denial of a post-remand motion to amend where the plaintiff sought to amend the complaint "years after it had filed its original complaint, after the parties had conducted extensive discovery, and after the district court had granted summary judgment").  As *Hoffman* explains, it is "well established that '[d]enying leave to amend is particularly appropriate when a lawsuit is on the verge of final resolution.'"  266 F. Supp. 2d at 34 (quoting *Wardell v. City of Chicago*, No. 98 C 8002, 2001 WL 849536, at *4 (N.D. Ill. July 23, 2001) (Rosemond, M.J.)).  This aversion to motions to supplement filed while a court considers a dispositive motion is particularly strong where the motion would alter the scope of the litigation. *See Clean Water Action v. Pruitt*, 315 F. Supp. 3d 72, 84-85 (D.D.C. 2018).  Yet another supplemental pleading is not appropriate where, as here, it is last ditch "effort to avoid an adverse summary judgment ruling." *See Local 472 of United Ass'n of Journeymen and Apprentices v. Ga. Power Co.*, 684 F.2d 721,

724-25 (11th Cir. 1982).  Accordingly, the Court concludes that Plaintiff does not warrant leave to file a supplemental pleading.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' [247] Motion for Summary Judgment, **DISMISSES** Count III for lack of standing, and enters judgment in favor of Defendants on Counts I and II.  An appropriate order accompanies this Memorandum Opinion.

Date:   December 1, 2022                    _____/s/_____

**COLLEEN KOLLAR-KOTELLY**
United States District Judge